THE STATE OF IOWA, *ex rel.* BROOKS, *v.* NAPIER, COUNTY JUDGE.

*Mandamus* will not lie to compel a county judge to submit to a vote of the qualified electors of the county, the question whether the said county judge should conclude a contract for the building of a court-house for said county, according to certain terms agreed upon between him and another person.

The county judge possesses the power to contract in the name of his county, for the erection of a court house, jail, and necessary public buildings for the use of his county; and he may enter into such contracts, binding the county thereby, without first submitting to a vote of the people

of the county, the question of their adoption, or the propriety of incurring the expenditure of money necessarily involved in such contracts.

Where a county judge refuses to submit to a vote of the electors of the county, the question of the adoption of a proposed contract, though petitioned so to do by a majority of the voters and tax-payers of the county, there is no remedy to compel him to submit the matter to a vote; and if the question were submitted, and the vote of the people were against the adoption of the contract, the result of the vote would impose no restriction upon the power cf the county judge in the premises.

A contract for the erection of a court-house, which provides that the work is to be completed in three years, "if the money can be provided for the same from time to time, from the proceeds of the swamp lands, with such other assistance as the county judge can furnish, without oppressive taxation," is not based upon an hypothecation of the swamp lands of the county, nor does it pledge their proceeds, or appropriate the same to pay for the erection of the court-house.

The writ of *mandamus* does not lie to compel a county judge to perform an act which the law does not specially enjoin upon him, as a duty resulting from his office.

*Appeal from the Polk District Court.*

· TUESDAY, DECEMBER 21.

This was an information, under oath, accompanied with an application to the district court for an alternative writ of *mandamus*, to be directed to the defendant, as county judge of Polk county, requiring him to submit to a vote of the qualified electors of said county, the question : "whether the said county judge should conclude a contract for the building of a court-house for said county, according to the terms agreed upon between him and Isaac Cooper, on the 22d of June, 1858.

It is shown by the information, that the county judge is about to conclude the said contract with the said Cooper, but that the same has not been fully consummated so as to bind the county ; that it will be necessary to borrow money in order to the execution of said contract, the county treasury being bankrupt ; that a majority of the voters of the county think a building upon the plan proposed and agreed upon between the county judge and said Cooper, would be

entirely too large for the wants of the county, and that the proposed price would be an extravagant outlay of money, involving the necessity of borrowing, or oppressive taxation; that a majority of the voters of the county have petitioned the county judge, to submit the question of the adoption of the proposed contract to a vote of the people of the county; and that said county judge has refused so to do, and still refuses.  The relators further cause the court to be informed, that the said contract is based upon an hypothecation, or pledge, of the swamp lands of Polk county, for the means of carrying the same into effect, which lands, they allege, can only be appropriated for such purpose, by a vote of the people of the county; that it is the express duty of the county judge to submit the question of such appropriation of the swamp lands to a vote of the people of the county, and a majority of the voters of the county must sanction the same, before the said land can be so appropriated, or hypothecated; and that the county judge has been requested by a majority of the qualified voters of the county, to submit the question of the hypothecation of the swamp lands, for such purpose, to a vote of the people of the county, and has positively refused so to do.  Whereupon the relators, averring that they are beneficially interested in said swamp lands, and in the disposal of the same, and in the question of concluding the contract with said Cooper for the erection of said court-house; and that they cause this information to be made, as well in behalf of one thousand and eighty other qualified voters, citizens, and tax-payers, of Polk county, beneficially interested, and whom it is impracticable to bring before the court, as in their own behalf; and who, having no other remedy at law, or in equity, whereby their rights and interests can be protected, or enforced, pray that a writ of *mandamus* may be issued, requiring the said county judge to submit to the qualified voters of Polk county, the question of the adoption of said contract.

At the August term of the district court for Polk county, the parties appeared by their attorneys, and the defendant

moved the court to dismiss the information. This motion was overruled; and the cause coming on for hearing on the application for the alternative writ of *mandamus* to the county judge, the said writ was denied.

The contract between the county judge and the said Cooper, is for the erection of a court-house, upon a plan agreed upon, for the sum of $64,300. The work is to be completed in three years, "if the money can be provided for the same, from time to time, from the proceeds of the swamp lands, with such other assistance as the county judge can furnish, without oppressive taxation." The relators appeal.

*Cole & Jewett*, for the appellants.

*John A. Kasson*, for the appellee.

STOCKTON, J.—We think it cannot be seriously questioned, that the county judge has the power to contract, in the name of his county, for the erection of a court-house, jail, and necessary public buildings, for the use of his county. Such power was possessed by the board of commissioners of the county, previous to the taking effect of the Code, (act of February 15, 1843, section 4.) And the county judge has succeeded to the usual powers and jurisdiction of the county commissioners and the judge of probate. Code, section 105. The county judge may enter into contracts for the erection of such buildings, binding the county thereby, without first submitting to a vote of the people of the county, the question if their adoption, or the propriety of incurring the expenditure of money necessarily involved in them.

Provision is made by the Code, for the submission of certain questions to a vote of the people of the county. These relate, however, to matters in which the county judge has no power without a vote of the people, and in which the object in submitting the question to them is, that their vote may confer a power which he did not before pos-

sess. These questions are: 1. Whether money may be borrowed by the county to aid in the erection of the public buildings. 2. Whether the county will construct, or aid to construct, any road, or bridge, which may call for an extraordinary expenditure. 3. Whether any local or police regulation, not inconsistent with the laws of the state, shall be adopted and declared in force in the county; and 4. In counties whose warrants are at a depreciated value, the question whether a tax, of a higher rate than that provided by law, shall be levied.

These are the subjects in relation to which provision is made by the Code, that questions concerning the same may be submitted by the county judge, to a vote of the people of his county. The proposition submitted, and the result of the vote thereon, are to be entered at large by the county judge upon his minute book, and notice of the adoption of the same, given to the people of the county. And from the time of entering the result, and the completion of the notice, the vote, and the entry thereof on the county records, are to have the force and effect of an act of the general assembly. Code, section 119. Provision is thus made for enforcing the will of the people of any county, expressed in the mode prescribed by the statute, upon any question authorized to be submitted to their decision. It becomes the law of the county in the same sense as an act of the legislature. There is no provision, however, under which the county judge may be required to submit to a vote of the people of his county, the question of building a court-house, or the adoption of a plan on which he proposes to build it. The county may be in debt, and its warrants depreciated; the court-house proposed to be built, as to the plan and cost of the same, may be altogether unsuited to the wants and to the means of the county; and yet, if the county judge chooses to contract for its erection, so far as we are able to discover, there is no limit to his discretion, and no means in the hands of the people to defeat it. If the proposed plan is submitted to the people, and is condemned by them, there is nothing to prevent the

county judge from entering into the contract, in spite of their vote against it. There is no mode of enforcing the will of the people, as expressed by their vote.

The relators, as the basis of their right to the alternative writ of *mandamus*, rely upon the fact that the county judge has been petitioned by a majority of the voters of the county, to submit to a vote of the people the question of concluding with said Cooper, the contract for the erection of said court-house. If the county judge may enter into the contract for the erection of the court-house, without first submitting the question to a vote of the people, it would be a very barren power in their hands, that they should be allowed, after the contract was completed, to require the county judge to submit to their vote the question of its adoption. The vote, whether for or against its adoption, could have no validity. It would neither add to the force of the contract, if the vote should be in its favor; nor would a vote against it, have the effect of annulling it, or setting it aside.

The writ of *mandamus* to the county judge, issues to compel the performance of an act specially enjoined upon him by law, as a duty resulting from his office. There was no duty imposed upon the county judge by the law, by reason of the petition relied upon by the relators. If the law had made it his duty, upon the petition of any certain number or proportion of the voters of the county, to submit this, or any similar question, to their vote, his refusal to act would have presented the only contingency upon which the writ of *mandamus* could have been prayed, to compel the performance of the duty enjoined.

He has refused to submit to the people, the question of the adoption of the proposed contract, though petitioned so to do by a majority of the voters and tax payers of the county. We do not see, that upon his refusal, there is any remedy to compel him to submit the matter to a vote. Nor do we see that if the question were submitted, and the vote of the people were against the adoption of the

contract, the result of the vote would impose any restriction upon the power of the county judge in the premises. He had full power to enter into the contract with Cooper, without first submitting the same to a vote of the people; and he has the same power, if upon submitting the question to them, the people should disapprove of the contract. If the law had designed that the county judge might be required to submit such a question to a vote of the people, it would not have denied to them the power to render the expression of their will effectual.

The relators, as a further reason why the writ of *mandamus* should be granted, cause the court further to be informed, that said contract is based upon an hypothecation of the swamp lands of said county of Polk, and aver that it is the duty of the county judge, to submit the question of the appropriation of said lands to the people of the county, and to obtain their vote in favor of the same, before he can employ the proceeds of said lands for any such purpose. We do not understand that the county judge has any power to hypothecate, or pledge for any such purpose, the swamp lands of his county. By the act of January 13, 1853, (ch. 13, 29), these lands were granted to the counties in which they respectively lie, for the purpose of constructing the necessary levees and drains to reclaim the same, and for the building of roads and bridges across the same when necessary; and when not needed for such purpose, to be expended in building roads and bridges through the county. By the subsequent act of January 25, 1855, counties organized at the time of the passage of the act, where it was impossible to reclaim the swamp lands, were, by that act, (ch. 110, 173), authorized to employ the proceeds of said lands, in the erection of county buildings, and other works of improvement in their limits, provided the question, including the proposed work of improvement, is first submitted to the people of the county, in the manner provided for in the Code. Sections 114, 115.

The proposed contract does not, according to our underderstanding of it, assume to pledge the swamp lands, or

their proceeds, or to appropriate the same, to pay for the erection of the court-house. The plan and the cost of the building, are agreed upon, and definitely settled. It is next stipulated, that the work is to be completed within three years. But this stipulation as to the time, is subject to the condition, that the money can be provided to pay for the work as it progresses, from the proceeds of the swamp lands, with such other assistance as the county judge can furnish, without oppressive taxation.

From the language used, it appears to us that the county judge, either doubtful of his right to pledge the proceeds of the swamp lands, without a vote of the people, or doubtful whether the people, on the question being submitted to them, would consent to such an appropriation, left the time within which the building was to be completed, uncertain, and to be determined by the fact whether the money could be provided by him, with the consent of the people of the county, from the proceeds of the swamp lands, or from other sources, without what he terms " oppressive taxation."

Upon this state of facts, the court is asked to require the county judge to submit to a vote of the people, the question whether the proposed contract shall be adopted by them. For what purpose, it may be asked, is such a question to be submitted to a vote ? The contract, as we have seen, contains no pledge or hypothecation of the proceeds of the swamp lands. The relators set forth, as one of the grounds of their application for the writ of *mandamus*, that no appropriation of the said proceeds can be made by the county judge for the purpose of building a court house, unless a proposition to that effect has first obtained the sanction of a majority of the voters of the county. What good is then to result from the submission of the contract to a vote of the people ? What is to be the effect of the vote ? Can the result, whichever way it may be, change the nature or terms of the contract ? We do not see how this could be. It could only afford to the relators the means of ascertaining what proportion of the people of the

county indorse the action of the county judge, or approve of the plan and style of the building he proposes to erect. Further than this, we do not see that the vote would have any validity, or answer any useful purpose.

We would not be understood as expressing the opinion that it might not become the duty of the county judge, under section 121 of the Code, and by virtue of the act of January 25, 1855, upon the petition of one fourth of the voters of his county, to submit to them the question of authorizing him to employ the proceeds of the swamp lands in the erection of the county buildings. That question we do not understand to be involved in the present cause. It is averred, in the information, that the county judge has been requested to submit to the voters of the county, the question of the adoption, or rejection, of the hypothecation of said lands, assumed by the relators to be involved in the terms of the proposed contract between the county judge and the said Cooper. The writ of *mandamus* is asked, to require the county judge to submit this contract to a vote of the people, and not to submit the question whether the proceeds of the swamp lands, shall be employed in the erection of the county buildings.

As before suggested, the whole question must be brought to the test fixed by the statute. Is it the duty of the county judge—a duty resulting from his office, and specially enjoined upon him by law—to submit to a vote of the people the question of the adoption, or rejection of this contract, upon the petition of any number of the citizens of the county? We do not think it is. The law has not imposed any such duty upon him. The writ of *mandamus* does not lie to compel him to perform an act, which the law does not specially enjoin upon him as a duty resulting from his office. Wherefore, we think, the writ was properly refused, and the judgment of the district court should be affirmed.

Judgment affirmed.