HULL & ARGALLS v. THE COUNTY OF MARSHALL, AND WELLS
& CHRISTIE v. THE SAME.

1. COUNTY JUDGE: COURT HOUSE. The providing of a court house was
one of the duties specifically imposed upon the county judge by the
Code of 1851.

2. SAME: IMPLIED POWERS. The performance of this duty involved the
power to enter into all necessary and lawful contracts.

3. SAME: TERMS GOVERNED BY THE STATUTE. The terms of such con-
tracts, so far as they relate to the payment of the expenses incident
to the undertaking, must be in accordance with, and subject to, the
provisions of the statutes regulating the disbursement of the funds of
the county.

4. SAME: MANNER OF PAYMENT. The expenses attending the erection
of a court house can be paid in but one of two ways: 1. Out of the
ordinary revenue of the county, on the warrants of the county judge:
2. Out of funds raised by borrowing money on the bonds of the coun-
ty, issued in accordance with power conferred upon the county judge,
by a vote of the people of the county, upon propositions submitted in
the manner prescribed by the statute.

5. PAYMENTS BY TREASURER. The treasurer has a legal right to pay out
the funds of the county in liquidation of county bonds only when
they have been given for money borrowed, and a special fund appro-
priated for that purpose.

6. WHEN BONDS ARE INVALID. The county judge had no power to issue
bonds of the county, in a negotiable form, without authority conferred
by a vote of the people; and bonds issued without such authority are
void. WRIGHT, J. dissenting.

7. PUBLIC AGENT: NOTICE. A party dealing with a public agent acting
under a delegated power must at his peril ascertain the existence and
extent of such power.

8. CASE CITED. Held that there is no conflict between the rulings of the
court in this case and in *The State of Iowa ex rel. Brooks* v. *Napier,
County Judge*, 7 Iowa, 425. WRIGHT, J. dissenting.

*Appeals from Tama and Johnson District Courts.*

TUESDAY, JUNE 25.

THE facts are stated in the opinion of the Court.

*C. S. Leport* and *Thomas Wilson* for the appellant.

I. The want of authority in the county judge to issue
these bonds, cannot be raised by demurrer. Saxton's N. J.,

Ch. R., 550; Ang & Ames Corp. § 224, and the authorities there cited. *Ring* v. *Johnson County*, 6 Iowa, 268. The last case is directly in point. A vote of the people was conceded necessary to the validity of the bonds, but the court say: "The pleader may assume the needful circumstances until the contrary is pleaded, * * * * and without further discussion, we percieve no reason why the plaintiff should be held to set out the power of the county in the first instance."

II. The execution of the bonds by the county judge was the act of the county, as a corporation, and is governed by the principles which govern the obligations of all corporations. Code of 1851, § 93; *McCullough* v. *The State of Maryland*, 4 Wheat., 400; *Clark* v. *Farrington*, Mss. opinion of the Supreme Court of Wisconsin; *Clapp* v. *Cedar County*, 5 Iowa,

III. The county judge has the authority to contract for a court house. Code of 1851, §§ 106, 129; *The State of Iowa ex rel. Brooks* v. *Napier, County Judge*, 7 Iowa, 425.

IV. Powers expressly granted to a corporation carry with them all authority the exercise of which is necessary to carry them into effect. *The City of Davenport* v. *Kelly*, 7 Iowa, 106; 2 Kent 298; *Clark* v. *Farrington, supra McCollough* v. *The State of Maryland, supra; Madison Plank Road* v. *Watertown Plank Road*, 5 Wis., 173.

V. So long as a corporation does not pursue a business different from the purpose of its organization, it may make choice of means and manner. *Stokes et al.* v. *The County of Scott*, 10 Iowa, proceeds upon this theory.

VI. The county may contract for any rate of interest the same as natural persons. If the question of issuing bonds had been submitted to the people, the rate of interest would not have been necessarily submitted. *Whitaker* v. *Johnson, County*, 10 Iowa.

*Clarke & Davis*, for the appellee, submitted a written argument, presenting the following propositions:

A county is but an *agent* of the State. As such agent, it possesses no powers but those conferred upon it by the principal. Its title of attorney conferring those powers is laid down in the statutes, and persons dealing with the agent, are bound to know the extent of its authority. If any person makes a contract with the agent, beyond the authority conferred, he does so at his own peril. The power conferred by the State upon the County is that defined by statute. It is organized for civil and political purposes only; it shall keep a seal such as may be provided by law; may acquire and hold property, and make all contracts necessary or expedient for the management, control and improvement of the same, and for the better exercise of its civil and political powers; may take any order for the disposition of its property; and may do such other acts, and exercise such other powers, as may be allowed by law. Code, 1851, § 93. Here are its general powers, of which every one is bound to take notice. Any act outside of this general authority, unless it be necessary to carry out some of the general powers, or unless it is incident to some general power, is void. Under this section, all the property held, and all contracts made in relation to it, are to be made and held, *for the better exercise of its civil and political powers*. The preservation of its civil and political powers, are the main end and object of the corporation. Does this grant of power, then, authorize the county to issue negotiable paper, bearing the highest rate of interest known to the law, or is the issuing of such paper a necessary incident to the power conferred? Does the letter of attorney, authorize the act? And if not authorized by the letter of attorney, is it not void upon its face?

This agent of the State—the County—does its business

and exercises its power, through another agent, called the County Judge. He is but the *agent* of an *agent*. His duties are also defined by statute. The extent of his authority is a matter of record. Whatever he may do outside of that authority is void. Chapter 15 of the Code of 1851, points out his duties. Thus, he is invested with the *usual* powers and jurisdiction of county commissioners, and with such powers and jurisdiction as are conferred by that statute, and the. accounting officer and general agent of the county. As such agent, he is authorized, to take the management of the county business, and the care and custody of the property of the county; to audit claims for money against the county, and to issue warrants for the same; to keep a minute book, in which shall be entered orders for the allowance of money from the county treasury, shall state on what account, and to whom, the allowance is made, dating the same, and numbering them consecutively through each year; and to keep a book for the entry in the order of issuance, of the number, date, amount, and name of the drawee of each warrant drawn on the treasurer, and to number the warrants so as to correspond with the number in the minute book. In relation to another agent of the County—the Treasurer—the statute further provides, that when a warrant drawn by the judge on the treasurer, is presented for payment, and of not paid for want of money the treasurer shall indorse thereon a note of that fact, and the date of presentation, and sign it, and thenceforth it shall draw interest at the rate of six per cent, &c. § 153. And § 155, directs the treasurer to keep a book, showing the number, date, drawee's name, when paid, to whom, original amount, interest, &c., paid by him.

The above includes all the powers of the county judge, necessary to be considered here, and so far from authorizing the issuing of negotiable paper, the statute, by implication, at least, negatives the power. The powers conferred on the county judge are the usual powers and jurisdiction of county commissioners, and we think it clear that they possess no

power to issue negotiable paper, that will bind the county. It has been held, that the ordinary county warrants, though payable to bearer, are not negotiable, so as to cut off any equity the county may have as against the payee. But the power here conferred, whatever it may be, has reference to the making of contracts for the county, rather than the payment of money under such contracts. That this is so, is clear from the explicit rules laid down by the statutes for the payment of debts due by the county. The mode and manner of payment is pointed out. The county judge is to audit all claims for money against the county, and to draw and seal with the county seal all warrants on the treasurer, for money to be paid out of the County Treasury. The warrant thus drawn is evidence of indebtedness against the county. When presented to the treasurer, it is his duty to pay it, if he has the money; if there is no money, the law makes it his duty to indorse that fact upon the warrant, with the time of presentation, and thenceforth it draws interest at the rate of six per cent. This is the mode provided by the statute for the payment of the ordinary liabilities of the county—it excludes by implication any other mode, and confers upon the agent of the county, no authority to issue negotiable bonds, bearing ten per cent interest per annum.

The bonds sued upon in this case are numbered 23 and 24, showing that 22 other bonds of like import have been issued by the county judge. For what they were issued, or how many more have been issued, does not appear from the petition. They pledge the faith of the county. They bear ten per cent interest per annum from date. They are payable one year after date. They are strictly negotiable. Where did the county judge get the authority to pledge the faith of the county? Where, to make these bonds bear ten per cent? Where, to make them payable twelve months after date? Where, to make them negotiable, imposing upon the county the expenses of protest? Not from the statute

certainly, for that points out an entirely different method of payment. Being thus contrary to the statute, and outside of the powers conferred upon the county judge, we say that they are void upon their face, as against the appellee.

It may be well here, for a moment, to examine into the intent and object of the statute, defining the powers of counties, and the duties of county judges. We concede that the law confers upon a county, the power to make the necessary contracts to carry on its powers, but whilst it does so, it is equally clear that it designed to restrict the power of the county or the county judge, to run the people in debt. It is evident, that the law contemplated that the county should be confined in its ordinary expenditures to the ordinary revenue, or at least that no great debt should be contracted, nor expenditure made, without consulting the people, and obtaining their assent. It is quite certain that if it had been supposed that a county judge possessed the power under the sections above quoted, to issue 24 bonds of one thousand dollars each, bearing ten per cent interest, without consulting the people, those sections would never have been enacted.

This brings us to the second branch of the subject. Here is the sum of $24,000 of indebtedness, bearing ten per cent interest, per annum, from date, as evidenced by these bonds. For whatever these bonds may have been issued, it is clearly an *extraordinary expenditure*. If so, the statute provides for just such a case, and to bind the county, it must be shown that the statute has been complied with. Sections 114 and 115 of the code of 1851, cover just this case. Where money is to be borrowed to aid in the erection of public buildings—where the county is asked to aid in the construction of any road or bridge, which may call for an extraordinary expenditure, &c., the question is to be submitted to a vote of the people; and § 116 provides that when the question submitted, involves the borrowing or the expenditure

of money, the proposition must be accompanied with a provision to levy a tax, &c. The law contemplates that the people shall know the uses to which the money is to be applied, and that they are to be taxed for its re-payment. It is a special proceeding resorted to for an extraordinary purpose, and the obligations issued in pursuance of it, should show that the law has been complied with, or for what purpose they were issued. That has always been the practice under the statute. It is in a measure like a court of limited jurisdiction—the power to act should appear upon the face of the obligation. It is necessary to show the power, to make the act valid. Thus, in all cases of bonds issued to railroad companies, the bonds recite the fact that they were issued in pursuance of a vote of the people, and in payment of subscriptions to the capital stock of the particular road, and in all suits on such instruments, the petitions, the bonds, or the coupons, recited the facts necessary to show that the county judge had jurisdiction to issue the obligations. Such was the case in *Clapp* v. *Johnson County,* 5 Iowa, and in *Ring* v. *The County of Johnson,* 6 Iowa, 265 the coupons showed the same thing.. In the last case, the court says: "Both the notes declared on and the declaration state upon their face, that they were given and issued upon subscription of the county to the stock of the Lyons, Iowa Central Railroad Company." Thus, in both these cases, the petitions and the causes of action, showed upon their face, for what the bonds were issued, and the court could see that the obligations were within the powers of the county, and the county judge. The bonds and coupons being legal upon their face, that is, showing that they were issued in payment of subscription to the capital stock of a railroad, the court, in *Ring* v. *The County of Johnson, supra,* properly held, that it was not necessary to set out in the petition, the power of the county to make the contract. The contract being legal upon its face; the bonds being issued for a purpose recog-

nized by law—it is to be presumed that it was correctly issued by the county judge.

While we recognize the law laid down in *Ring* v. *The County of Johnson*, we contend that the case at bar does not come within its principles. The 24 or more bonds issued by the county judge of Marshall county,—two of which are here in suit—do not show for what purpose they were issued. In that material respect, they are unlike the bonds and coupons in the cases cited above. They show nothing upon their face, from which this court can say that the county judge had the power to issue them under any circumstances. On the contrary, they show affirmatively that they are outside of the authority conferred upon that officer, in two respects, at least, viz: 1. In pledging the faith of the county; and 2. In making the bonds bear ten per cent interest, per annum, for twelve months before they became due. Hence, we say, that no presumption arises that the bonds were correctly issued by the county judge. No such presumption arising from the face of the instrument, we are brought back to the starting point, and the party seeking to recover upon it, must allege the facts necessary to show the lagality of the act, or the power of the county or its agent to do the act. Where the act done, or the power to do the act, is shown to be legal, the presumption of its correctness properly applies, and must stand until overthrown by evidence.

This, in our judgment, is the only safe doctrine for the people. A county judge is an officer of limited powers. His authority is defined by statute, which every one is bound to know and comprehend. No one need be deceived or injured by such a rule. If the act is legal, and within the power of the county judge, it is easy to allege and show it. On the other hand, any other rule might be ruinous to the people of the counties. If every obligation issued by a county judge, in the name of the county, is valid on its face, and binding on the people, unless impeached by them,

150 SUPREME COURT OF IOWA,

Hull & Argalls v. The Co. of Marshall, and Wells & Christie v. The Same.

the *onus* is thrown upon them to show the fraud or invalidity; and then, as in the case of bar, when the obligations are in the hands of subsequent parties, the question of *notice* arises. If they are valid on their face—if the county is bound *prima facie*—then, when they are in the hands of subsequent purchasers, the county is liable, unless it shows not only the invalidity, but *notice* to the purchaser. These kinds of claims are always in the hands of third parties—the original holders, who are parties in the wrong or fraud, are sharp enough for that; and the consequence is, that the county is unable to show notice, and the people are fleeced. To hold, then, that such contracts are valid on their face, and that the county must show that the act of its agent is void, for fraud or want of authority, imposes a necessity upon the people that they cannot meet, and which places them at the mercy of any dishonest county judge. We trust that this court will hesitate long before it establishes such a doctrine.

In support of the foregoing propositions, the following additional authorities are cited. *Broughton* v. *Manchester Water Works*, 3 Barn. & Adol. 1; *Stark* v. *Highgate Archway Company*, 5 Taunt. 792; *The Same* v. *The Council of Litchfield*, 4 Adol. & Ellis, 891; *New York Fire Insurance Company* v. *Ely & Parsons*, 2 Cow. 678; S. C. 5 Ib. 560; *The People* v. *The Utica Insurance Company*, 15 John. 383; *Jackson* v. *Campbell*, 5 Wend. 572; Grant on Corp. 72.

*H. C. Henderson*, also for the appellee, filed a written argument from which the following proposition and authorities are condensed:

I. The county is constituted a body politic and corporate for civil purposes only, (§ 93, Code of 1851,) and in its corporate capacity cannot do anything which is not either expressly authorized by law, or plainly implied from express provision of law; nor can any officer or agent of the county

do any act not authorized by, or plainly implied from express provisions of law.   *Clapp* v. *Cedar County*, 5 Iowa 53 and 55.

1. The county judge is general agent of the county.   Code of 1851, § 106.   *Clapp* v. *Cedar County*, *supra.*

2. But his general agency extends only to the exercise of such powers as are conferred by law.   He is the creature of the law, and *governed by it.   Clapp* v. *Cedar County, supra.*

3. *All claims* must be *audited* and allowed by the county judge, and he draws his *warrant* on the treasurer for the amount.   2d Clause of § 106, Code of 1851.   A *warrant,* is simply an order to pay to a particular person a particular sum of money, and is different from the instruments sued on in this case, in that these are payable to Dishon, *or order, at a future day, with ten per cent interest.*   Warrants are drawn by the proper officers of the general and state governments, as well as by county, but the uniform practice precludes the idea of any authority to issue *bonds* or *treasury notes,* without express legislative enactment.

Again, the law contemplates the ability of the county to pay its indebtedness, when audited and allowed, and a warrant issued for the amount, but in case there is no money, then by a certain process, it may be made to draw interest, (§ 152, Code of 1851;) but if the instruments sued on in this case are warrants, or of the same character as warrants, then how could the section 152, have any effect?   These bonds could not be paid by the county treasurer, until audited like any other claim against the county, and a warrrnt drawn on him for the amount, by the county judge.   §§ 105 (2nd. clause) and 152.

4. Section 114 of the Code, provides for the submision to the people, of the question, whether money shall be borrowed for the purpose of aiding in the erection of public buildings, or any matter requiring extraordinary expenditures.

152    SUPREME COURT OF IOWA,

Hull & Argalls v. The Co. of Narshall, and Wells & Christie v. The Same.

Now this section we, think plainly implies, that the indebt-edness shall not be incurred, without a vote of the people in favor of it, and not then, unless the people vote for a tax to meet the indebtedness.  *State ex rel. Brooks* v. *County Judge of Polk County*, 7 Iowa, 428.   Code, § 116.

To say that the county judge may not borrow money to aid in erecting public building, but may issue bonds to the contracter, is to authorize him to evade the law, and accom-plish by indirection what he cannot directly.   To loan the credit of the county to the contractor, to be by him hypoth-ecated for the money, is certainly equivalent to borrowing money by the county; and it would be strange if the legis-lature intended in defining the powers and duties of the county judge, to leave the door wide open for the evasion of its enactment.

The authority to make a court house contract does not carry with it the power to issue bonds in payment.   If the power does not exist independently of the contract, it can-not exist at all.   Otherwise the county judge creates the power by which he acts.

II.  It is claimed that however the question of authority to issue the bonds may be held, that the question is not properly raised by demurrer, but the facts showing want of authority should be pleaded.   I do not so understand the law, nor the rules of practice and pleading.   If one claims under a contract with an agent or attorney, or one having limited authority to act, the authority is not presumed, but must be averred and proved, and the *onus* is upon the party assum-ing the authority.   The plaintiff must make out his case *prima facie*, before the defendant is obliged to plead.   Now if there is no inherent, or general power in the county or the county judge, to issue the bonds, but the power is derived from some special proceeding, or state of facts, then the facts constituting the authority must be shown *affirmatively* by the plaintiffs.

As in this case, if the people have voted in favor of issu-

ing the bonds, it is an easy matter for the plaintiffs to show the fact, but it might be impossible for the defendant to show that such power does not exist, or that such vote was not taken. All that could be done, would be to show that we could find no record of a vote, and the *inability of the defendant to show the authority, the very existence of which he denies,* would constitute the only proof. This would certainly be a novel mode of proving a case. But if the the defendant pleads, or must plead new matter negatively, then it must follow, either that the burden of proof is upon him, or that the plaintiff is thereby compelled to prove facts not even referred to in his pleading. It may be said that the plaintiff can reply and set up the authorities when it is denied. This would be only postponing the issue—for it must come to the question of authority at last. And this course would have another strange effect, that the first pleading tendering the issue, is a regular averment of defendant upon a point, as I think, absolutely essential to make out even a *prima facie* case for plaintiffs. Surely this view of the case cannot be seriously contended for. The doctrine we contend for, is certainly sustained by the mode of pleading in actions or preceedings in courts of limited jurisdiction—the jurisdiction or authority must be pleaded by plain, tiff, as is well settled by this court. See *Morrow* v. *Weed*, 4 Iowa, 77; *Cooper* v. *Sunderland*, 3 Iowa, 114; *Little et al.* v. *Sennitt*, 7 Iowa 334; *Bridgman* v. *Wilcot*, 4 G. Greene. 563; *Seely* v. *Reed*, 3 G. Greene., 374, and the authorities therein cited.

LOWE, C. J.—These causes have their origin in a similar state of facts, and in their main features involve the same questions.

On the 14th day of January, 1859, Wm. C. Smith, County Judge of Marshall County, contracted with one Wm. Dishon, for the buliding of a court house at Marietta, in said county, to be completed in twenty months, at a cost of $26,000; and

issued and delivered to him as payment therefor in advance, twenty-six bonds of one thousand dollars each, of the date aforesaid, drawing ten per cent interest, and payable to William Dishon or order, in one, two, three and four years, with coupons attached for the annual payment of interest.

A part of these bonds were at once sold, endorsed and their payment guarantied by Dishon to the plaintiffs, who, after the demand and protest for non-payment at maturity, have brought their respective suits, to recover upon the same against the county of Marshall and the guarantor. The latter makes no defense; the former seeks by demurrer to the petitions to raise the questions of the power of the County Judge to fix a liability upon the county, in the manner and by the description of paper above specified. The demurrers being sustained in both cases, the plaintiffs appeal to this court.

A county is a political sub-division of the State, invested with certain limited and specified powers, which are divided among and are to be exercised by a class of agents or county officers appointed for that purpose. Their duties are not only defined, but the mode of performing them is in many instances prescribed by law; especially those which relate to the fiscal operations of the county, and the raising of money by taxation. When this is done, it is a well settled maxim that the power must be exercised precisely as it is given. Indeed it is a general rule, that when the statutes confer special ministerial authority, the exercise of which may affect the rights of property or incur a municipal liability, it shall be strictly construed and as strictly observed, and that any departure will vitiate the whole proceeding. Sedgwick on Stat. and Const. Law, 347–351.

Among the number of county officers created by law is the county judge, whose duties are both ministerial and judicial; and whilst the power to provide for the erection of a court house, jail and other county buildings, is expressly

enumerated and made the duty of that officer, yet this duty is in its nature ministerial, although under the Code, it falls within his functions as a county court. It is conceded that in the execution of this power, the right to enter into contracts with third persons for the building of a court house necessarily follows, subject however to the restrictions, as to the mode of payment laid down in the law. If the expense of the building is to be met out of the ordinary revenue of the county, it can only be drawn from the County Treasury in the particular manner designated in the statute. The judge as the accounting officer of the county, is required to audit and allow the expenses or charges as they shall accrue and mature, as it is his duty to do with all other claims against the county; and when this is done to draw, sealed with the seal of the county, his warrant on the Treasurer for the amount of money thus to be paid from the County Treasury, and to enter upon his warrant book in the order of their issuance, the number, date, amount, and name of payee of each warrant drawn on the county treasurer. When this warrant is presented for payment, and not paid for want of money, the treasurer shall endorse thereon a note of that fact, and the date of the presentation, after which it draws six per cent interest. This being the rate of interest expressed by law, it would not be competent for the county officers to allow a greater amount. Nor is the treasurer permitted to disburse any money from the county treasury otherwise than upon the warrant of the county judge. Code of 1851, § 152.

To this there is but one exception, or one other method of drawing money from the county treasury. And that is, as we understand it, where the people of a county by, a vote in the manner described in the Code, authorize a loan of money for some of the county purposes named therein, calling for an extraordinary expenditure. Such vote however, amounts to nothing unless the proposition to borrow

156     SUPREME COURT OF IOWA,

Hull & Argalls v. The Co. of Marshall, and Wells & Christie v. The Same.

money is accompanied by a provision to lay a tax for the payment thereof, which must also be adopted by a vote.

Money raised for such a purpose constitutes a fund distinct from all others in the hands of the treasurer until the liability thus increased is discharged. What sort of paper or security, the county shall give for money borrowed is not provided for in the statute. In the absence thereof, however, we suppose that when the authority is regularly conferred, it carries with it the requisite incidents for its due execution; and that negotiable bonds not unlike those sued on, might be very properly issued. The holders of such securities after maturity, would be entitled to present them to the county treasurer, who could safely redeem the same out of the fund set apart and specially appropriated for that purpose.

It may be safely stated that the above are the only methods known to the law for reaching the money in the county treasury, for the building of a court house. That is to say, where the costs and charges of such an undertaking are to be defrayed out of the ordinary revenue of the county, then the money necessary to meet the expense thereof, may be drawn upon the warrant of the county judge in the manner above indicated, without any appeal to the people of the county for authority to do so. If, however, an extraordinary expenditure is contemplated, which the ordinary revenue of the county would not likely meet as fast as the same should fall due, then it would be competent for the county judge to borrow money as before stated, provided, *first*, that he obtained his authority for so doing, by a majority vote of the people of his county; and, *second*, that the people authorizing the loan, shall also provide for the payment thereof, out of a special fund to be raised by taxation.

The wisdom of such a regulation for the disbursement of the county funds is apparent. It guards against an unreasonable abuse of the powers vested in the financial agents of the county. For it will be noticed that under the first of

## JUNE TERM, 1861.

Hull & Argalls v. The Co. of Marshall, and Wells & Christie v. The Same.

HARVARD LAW SCHOOL LIBRARY

the above methods of drawing money from the county treasury, that it can only be done upon a claim already subsisting, and in the payment of which the county gets an equivalent in advance. The second method contemplates the payment of money to be borrowed alone under the authority of the whole body of the people of a county, to whom so important a depository of power may be safely entrusted. Whether, therefore, the money is disbursed in the one or the other of these ways, the rights of the people and the security of their funds are fairly and adequately protected.

It is true that the power to issue county bonds in the form of negotiable securities is not expressly provided for in the statute, under any circumstances, or for any state of case, yet it is insisted that the right to do so, in the absence of any statutory direction, flows by implication from the power to borrow whenever such power is conferred. Without such right it might not be possible to affect a loan of money under the rules regulating the commerce and capital of the county.

But if it should be asked why this same implication of law does not equally apply to the power given to the county judge to contract for the building of a court house, carrying with it the right to employ the requisite means necessary to accomplish the end, even if that should involve the necessity of executing the bonds of the county in the form of negotiable paper, the answer is a plain one. The statute is not silent on this subject, but specifically defines just the manner in which all the funds of the county shall be disbursed; and hence it follows that all contracts made by the county judge, contemplating payment out of the county funds, must be made in subordination to these limitations and provisions of the statute. If the contract should stipulate for the payment of the money in any way not authorized by law, or out of a fund not provided for by law, it would be nugatory and void. To sanction and enforce such a contract would be to break down all the barriers and checks which the law

**158**      **SUPREME COURT OF IOWA,**

Hull & Argalls v. The Co. of Marshall, and Wells & Christie v. The Same.

has erected around the county treasury to protect its finances. It seems to us that Dwarris, in his treatise on Statutes, (which is frequently quoted by Sedgwick in his work on Statutory and Constitutional law, with approbation,) states the true principle of interpreting all such statutes when he says, that, " *as a maxim it is generally true, that if an affirmative statute direct a thing to be done in a certain manner, that thing shall not, even although there are no negative words, be done in any other manner.*

Now, recurring to the bonds sued on in the above cases, the question is asked, under our system of county finances, and the special regulations adopted by the legislature, for their collection and disbursement, how are they to be liquidated and paid off? If presented by the holders to the county treasurer, where is his authority for receiving and settling the same? Shall he pay them out of the ordinary revenue of the county? This would not only be inadequate to meet them, but the statute requires that this discription of county funds shall only be disbursed upon the warrants of the county judge.

Although the expenditure of $26,000 in the building of a court house, in a new county like that of Marshall, must be regarded as an extraordinary expenditure, yet it is not pretended that the voters of that county either authorized a loan of money, or provided a special fund to meet such expenditures, in the absence of which it is impossible to see how these bonds are to be legally taken up and discharged. It would be no answer to say that they could be paid out of the ordinary revenue of the county by exchanging them; as they fall due, for the county judge's warrants, for this would be an attempt to reach a fund raised and set apart for ordinary police objects, and which could not be legitimately used for any other purpose, in order to pay an extraordinary liability fixed upon the county by the act of the county judge alone, and which, in its practical effect and operation, is the

JUNE TERM, 1861. 159

Hull & Argalls v. The Co. of Marshall, and Wells & Christie v. The Same.

same as a county loan. The General Assembly deemed it inexpedient, if not dangerous, to permit the county judge, in his own discretion, to contract a debt against the county, by way of a loan for any amount, without the sanction of the people. Hence the prohibition. Nevertheless, to issue bonds of the description of these on which suit is brought, for the purpose of raising money on them, (whether that be done by exchanging them as security for money, calling it a loan, or selling in the market for money, by the county judge or court house contractor, can make no difference,) has not only the effect to establish the relations of debtors and creditor between the county and the holder of the bonds, but to stamp the transaction, in its essential features and ultimate consequences, with the incidents of money borrowed. And if such a power should be recognized, it would be productive of the very mischief intended to be guarded against in the law, and open the door for the most stupendous abuses and frauds.

A majority of this court, therefore, cannot but view the issuing of county bonds, in the form of negotiable paper to be sold in the market, without limit as to number and amount, in the absense of any authority from the people of the county, as a manifest perversion of the law, and a dangerous power which should be arrested at the threshold of its exercise. There is less apology for resorting to such artifices to raise money, inasmuch as every public exigency of the county may be fully met within the provisions and limitations of the law defining the duties and powers of the county agents.

From this partial analysis of the statute defining the powers of a county judge over the subject of court houses, we deduce the following propositions: *First*, That among others, the duty of providing a court house is specifically enumerated and enjoined. *Second*, That the performance of this duty involves the power to enter into all necessary

and lawful contracts. *Third*, That the terms of such contracts, so far as they relate to the payment of the expenses incident to the undertaking, must be in accordance with, and subject to the provisions of the statute regulating the disbursement of the county funds. *Fourth*, That the costs and charges of erecting a court house can only be paid in one of two ways, either out of the ordinary revenue of the county, or by a loan of money; that under the first of these methods the payment must be made alone upon the county judge's warrants, issued in the particular manner prescribed bylaw, for subsisting claims duly audited and allowed. The second method contemplates a cash payment out of a fund borrowed for that purpose, which, when authorized, furnishes the only occasion where a county judge can bind the county by negotiable securities. *Fifth*, That the county treasurer has a legal right to pay out the funds of the county in liquidation of county bonds only when they have been given for money borrowed, and a special fund appropriated for that purpose. *Sixth*, In the absence of either of these contingencies, the authority to issue bonds in the form of negotiable paper, binding the county for the future payment of money, is wanting, and if exercised would be a void act.

In each of the above cases a demurrer was interposed, raising the question of the validity of the bonds and coupons sued upon, inasmuch as the authority of the judge to issue them, did not appear upon the face of the bonds or by allegations in the petitions to have been derived from a vote of the people of the county.

The demurrers were sustained in the court below, and the plaintiffs insist that this was error. They claim that if under any circumstances, in any state of cases or contingency, a a county judge is authorized to execute in the name of the county, negotiable bonds, there is no legal necessity to state in the petition, that the state of case existed or con-

tingency had happened, which conferred the authority; but the bonds being *prima facie* regular upon their face, and importing as they do, a good consideration, that a cause of action is stated whenever they are properly described in the petition; and that the extrinsic fact relied upon by the defense to impeach the validity of the bonds, should be the subject of a plea in bar, and cannot be reached by demurrer. This position was most ably maintained in argument, the soundness of which in the present aspect of this case, we do not feel it necessary to contradict, for the reason that its application to the facts in this case is not observable.

The bonds in question contain the following language: " *By authority of the statutes* of the State of Iowa, for value received, I, William C. Smith, county judge of said county, do hereby pledge the faith of said county of Marshall to the payment of one thousand dollars, to Wm. Dishon or order, twelve months after date," &c.

The affirmative statement that the judge derived his authority for issuing the bonds from the statutes, excludes the idea that he obtained it from any other source. The demurrer was intended to settle the question whether the statutes did confer such a power. We have already given our interpretation of the statute upon this point, and held that it did not, but that it only prescribed the manner in which the authority to borrow money might be obtained by a vote of the people of the county, and the resulting power to issue bonds for such loan. The two things are quite distinct. If the demurrers had been overruled, it seems to us the legal effect of such a decision would be to hold just what the judge, in the execution of the bonds, claims upon their face—that the power to do so is delegated in the statute. Still, as a question of pleading and practice, we readily confess that it is not free from doubt, and would be inclined to give it a more thorough examination, if practically it was

162     SUPREME COURT OF IOWA,

Hull & Argalls v. The Co. of Marshall, and Wells & Christie v. The Same.

of any importance to the parties whether the existence of the power, which is the great object of the inquiry, was determined under an issue of law, or under an issue of fact. Under the circumstances, we are inclined to think there was no error in sustaining the demurrers.

A question was made upon the argument, whether in the hands of innocent holders, these bonds should not be collected against the county in any event. If the power to make, never existed, no subsequent transfer of the bonds could give to them the effect of legal liabilities in the hands of any one. On the other hand, if the power had been delegated, resulting as it would in this case by a vote authorizing a loan, then any irregularity in conducting the vote, or other imperfection in the execution of the power, would not have been allowed to vitiate the bonds or prejudice the rights of *bona fide* holders, either in a direct or collateral proceeding. In transactions of this kind the public agent acts alone under delegated power; and third persons, dealing with him, must, at their peril, ascertain for themselves whether in fact and law the authority being exercised does exist. 21 How. 441, 539; 23 Ib., 381.

It only remains for us to state, that according to our apprehension, there is no conflict between the opinions above expressed and the ruling made in the case of *The State of Iowa ex. rel. Brooks* v. *Napier, County Judge*, 7 Iowa 425.

Affirmed[1].

---

(1.) The following petition for a re-hearing of this cause, was filed by *Bissell & Shiras*, of counsel for Hull & Argalls, appellants, and after consideration by the court, was overruled:

The pleadings in this case show that the bonds and coupons, upon which this suit was brought, were part of a series of bonds issued by the defendant to one William Dishon, or order, in payment for building a Court House in said county, and by Dishon endorsed to plaintiffs before due; that plaintiffs are *bona fide* holders for value.

It is admitted that the County Judge had *power* to contract for the erection of a Court House, and also to contract that payment should be made for such erection at a future day, and that the cost of such Court House does not affect the question of power, except in a case of fraud, and then only as evidence of fraud between the parties. The whole question turns upon the power of the County of Marshall, or of its legally constituted officers, to

Hull & Argalls v. The Co. of Marshall, and Wells & Christie v. The Same.

WRIGHT, J., *dissenting*. I do not believe that the forego-
ing opinion contains the law as applicable to these cases,
and therefore I dissent. In my view the Chief Justice com-
mits the double error of discussing questions really not
made by the record, and then misconstruing the law as
applied to those questions.

The instruments sued on are of the tenor following:

" $1000.          OFFICE OF COUNTY JUDGE, ⎫ No. 25.
                  Marshall County, Iowa,  ⎭

" By authority of the statutes of the State of Iowa, for

---

issue coupon bonds in payment of indebtedness then accrued, or thereafter to accrue. It is
true that a County is a political subdivision of a State, invested with limited and specific
powers, that all its power is derived from the act creating such corporation; but it is
also true, that every municipal corporation has certain implied powers which are derived
from the duties imposed upon it. The authority referred to by the court, in Sedgwick on
Stat. and Con. Law, 347, 351, does not refer to the *powers* of *municipal corporations*,
or of their officers, but to *summary judicial* proceedings and *summary administrative*
proceedings. In *McMillan* v. *Lee County*, 3 Iowa, 311, the Court use the following lan-
guage: " Then again, the counties exercise granted powers, and, as municipal organiza-
tions, cannot exercise any other. *If not expressly granted, yet, if necessary to carry
out, or accomplish the purpose and object of their creation, they may be exercised,
but not otherwise.*" Many of the powers exercised by the officers of municipal corpora-
tions are not *specifically pointed out*, but arise, or grow out, of other duties devolved
upon such officers. The Code confers certain powers upon counties, and provides, that
"each county, now or hereafter organized, is a body corporate for civil and political pur-
poses only, and, as such, may sue and be sued; may acquire and hold property, *and make
all contracts necessary or expedient for the management, control and improvement
of the same, and for the better exercise of its civil and political powers; may take
any order for the disposition of its property, &c.*" By chapter 15, the county judge is
made the general agent and the officer who is to exercise and carry out all the powers of the
county. He is in fact the county itself, as far as any act is concerned, for the county acts
through him only. "He is in fact the head and hand of the county."

If the county, by its county judge, can contract, it of course can create a liability by such
contract; a liability to be performed at a future time; a liability to be measured by a money
equivalent; a contract which, if it comes within its civil and political powers, is only to be
measured by the discretion of the county judge. In regard to building a court house, this
court has decided, in the case of *Brooks* v. *Napier County* Judge, 7 Iowa, 225, that the
county judge has power to contract for the erection of a court house, that he has a right to
contract for the payment of the money at a future day; and that the manner of the exer-
cise of his discretion or power, cannot be controlled by any one. This seems all to be con-
ceded in the opinion filed in the case at bar; but the court say, "subject however to the
restrictions as to the mode of payment laid down in the Code." "If the expense of the
building is to be met out of the ordinary revenue of the county, it can only be drawn from
the county treasury in the particular manner designated in the statute.

As far as we can discover, there is no provision of the Code which provides for drawing
money out of the *ordinary* revenue of the county, or from any *special* fund. The Code
provides that the county judge shall audit claims against the county, and also audit and set-

164    SUPREME COURT OF IOWA,

Hull & Argalls v. The Co. of Marshall, and Wells & Christie v. The Same.

value received, I, William C. Smith, County Judge of said county, do hereby pledge the faith of said County of Marshall to the payment of the sum of *one thousand dollars* to William Dishon or order, in twelve months from this date, with interest at the rate of ten per centum per annum, payable annually, at the office of the County Treasurer of said county as per coupons hereto attached; and by virtue of said authority, the County Treasurer of said Marshall county, is

---

tle the Treasurer's account; also, he is required to keep an account of receipts and disbursements, and *and also all debts payable to and by the County*, &c. By § 124, money raised by loan is a special fund in the treasurer's hands. So road funds and other funds are special funds in the hands of the treasurer. See Code, § 156. The Code, § 152, provides that the treasurer shall disburse the money in his hands on warrants drawn and signed by the county judge and sealed with the county seal, *and not otherwise*.

The county may be liable to pay a demand against it, and also may be liable to have a judgment rendered against it, in cases where the treasurer would not be authorized to pay the demand. The authority of the treasurer to pay a demand upon presentation is no test of the liability of the county, or of the validity of a contract with the county, and because the treasurer is not authorize to pay a demand, is no test of the liability of the county to pay such demand.

There is no distinction in this respect, in the Code, between the liability to pay out of the *general* or out of the *special funds*, upon ordinary or extraordinary expenditures. The provisions of the Code are the same in all cases.

The court, in the opinion filed, say: "The Judge is the accounting officer of the county; is required to audit and allow the expenses and charges as they shall accrue and mature." This is not the language of the Code. The Code, § 106, p. 21, says, "to audit all claims for money against the county" &c. This does not require that the claim *shall have matured or accrued*. The Code does not say that he shall audit all claims and draw his warrant on the treasurer for *such claims;* but the auditing claims and drawing warrants on the treasurer are separate acts, and independent acts as to time. A claim for money may be audited and allowed as a money demand, when it is not payable at the time.

Suppose a contract should be made with a county to perform a certain amount of labor, and the money to be paid in a stipulated time after the completion of the contract, and suppose the contract should be performed and an application made for an acceptance of the contract, and to have the amount due audited and allowed, would not the judge have au thority to audit and allow such a claim, and fix the time of payment, and give to the party entitled evidence of the allowance? The liability would arise from the performance of the work.

The court assumes that the county cannot pay, or contract to pay, a greater amount of interest than six per cent., because, when county warrants are presented for payment and are unpaid for want of funds, they will draw interest at that rate. All parties, having power er to contract to pay interest at all, may contract for any rate they please, unless there is some statute restricting them in this respect. It is not true that the county officers may not contract to pay interest on unpaid warrants at a greater rate than six per cent., for there is nothing in the statute which limits such power. The statute is only intended to provide, that warrants shall become due and draw interest from presentment. Even if the statute did restrict the county officers to the payment of six per cent interest on the warrants unpaid, this cannot be construed into any limitation upon other contracts of the county.

There is no provision in the Code which requires the county to give any particular evidence of indebtedness, whether the same is to be paid out of the general or special fund of

hereby authorized, directed and required to pay to the legal holder of this bond at its maturity, the said sum of one thousand dollars, together with the coupons hereto attached, as the same fall due. In witness whereof, I have hereunto set my hand as County Judge, and affixed the seal of said county, at Marietta this fourteenth day of January, A. D. 1859.

    [Seal.]               WILLIAM C. SMITH,
                              County Judge."

the county. Each fund. as far as the statute is concerned, is disbursed in the same manner; the treasurer can pay neither without the warrant of the county judge. If a fund is raised by a *special tax*, this does not give the *treasurer* any greater control over it than when the fund is raised by a general tax. The treasurer has no ministerial power, he exercises no judgment, he is absolutely to pay no money, except upon the warrant of the county judge. It is true that there are certain liabilities which cannot be created by the county judge, without a vote of the people; but building a court house is not one of them. In *Brooks* v. *Napier, County Judge*, 7 Iowa, 425, the court ruled that the *value* of the court house to be built had nothing to do with the question of the power of the county to build a court house, and that the amount to be expended, did not determine whether it was extraordinary expenditure or not. It is true that such liability, created without a vote of the people must be met out of the ordinary county revenue. This is a matter that rests exclusively between the county, contracting through the county judge, and the contractor. When the money comes due, the county is responsible for it.

The wisdom of allowing a county to incur an indebtedness, and to issue its negotiable paper as evidence of such indebtedness, is a matter which this court is not called upon to determine. This court can only determine as to the power of the county to incur such indebtedness under the laws, as they existed at the date of the bonds. This is not a new question. It has been before the courts, and has been settled, if any question can be settled by the courts of the country. In the case of *Ketchum* v. *The City of Buffalo*, 4 Ker. 356, in the Court of Appeals of New York, the question involved in this case were fully decided. It is there decided that a municipal corporation, being *merely* authorized to establish markets, may purchase the necessary grounds for the purpose; that it may purchase on credit; that it may give its negotiable bond in payment for the same. (See also *State of New York* v *City of Buffalo*, 2 Hill, 434; *Kelley* v *City of Brooklyn*, 4 Hill, 263; *Halstead* v. *The City of New York*, 5 Barb. 215. In the first of the above cases, the court expressly decide, that such an indebtedness is not a borrowing of money, and did not come within the statutory prohibition on that subject. The court there shows that there is a marked distinction between incurring a debt and issuing a note, or bond, for a legitimate purpose and *borrowing money* with such power, that it could be used for any legitimate or illegitimate purpose. If bonds were issued and sold by the county judge for some legitimate purpose, but where the proceeds are not a special fund under the law, the county judge might divert it from its ostensible purpose, because the fund would be in the ordinary county fund; but when bonds are issued for building a court house under contract, they cannot be diverted to any other purpose. None of the objections against borrowing money can lie against such indebtedness.

It is immaterial whether the ordinary revenue of the county meets this indebtedness or not, and this court cannot say that, in this case, the ordinary county revenue would not meet this indebtedness. There is certainly nothing in the pleadings which shows that the ordinary county revenue would not meet it. We cannot see by what rule of law this court can *presume* any such fact. Can this court determine that a suitable court house for the county

166     SUPREME COURT OF IOWA,

Hull & Argalls v. The Co. of Marshall, and Wells & Christie v. The Same.

And this coupon :

"$100.          COUPON.          No. 1.

Marshall County Iowa Bonds.

The Treasurer of said county will pay to bearer one hundred dollars, on the 14th day of January, A. D. 1860, being the interest due that day on No. 25, payable to William Dishon or order.

[Seal.]                       WILLIAM C. SMITH,

County Judge."

---

of Marshall could have been erected in January 1859, for a less sum than $26,000? What is the revenue of Marshall county, and what are its current expenses, upon the knowledge of which this court can determine that an expenditure, in which the sum of $26,000 is payable during a term of four years, is an extraordinary one, and that it cannot be met by the ordinary county revenue?

The court however says, that to pay for the erection of a court house would be to reach a fund set apart for ordinary *police* objects, and could be used for no other. But in *Brooks* v. *Napier*, *County Judge*, this court decided that a payment for the erection of a court house could be made out of the ordinary county revenue; that the erecting of a court house was an ordinary duty of a county judge.

We think the *first* proposition laid down by the Supreme Court is correct.

The second proposition is undoubtedly correct as far as it goes; but there might be well added, "either for cash or on credit, as might be deemed necessary by the county judge."

The third, we think, is not correct, as it is not necessary that a contract, to bind the county, should be of such a form, or character, as to authorize the treasurer of the county to liquidate it upon presentment. The disbursement of the county revenue is entirely separate and distinct from the power of creating a liability against the county.

The fourth proposition may be correct, if it is limited to the *actual disbursement of money by the treasurer;* but if it is extended to embrace the *creation of a liability*, then it is clearly erroneous.

The fifth is correct, as applied to the county treasurer; but this is not a proceeding against the county treasurer.

The sixth is clearly erroneous, as the authorities are all the other way. It is a settled proposition that as far as a municipal corporation is given power to act, it can act just as far as any other person. unless it is expressly restricted; and there is no restriction upon the county, as to the form of indebtedness it may create.

Every municipal corporation is required to have its funds in some particular officer's hands, and such officer can only pay the same out upon orders of one or more of the other officers of the corporation. Still, unless restricted, negotiable payment may be given by a *municipal corporation*, as well as by any other corporation, and is constantly given, and the issue of such paper is sustained by the courts.

We do not claim that the bond itself shows the authority of the county judge to issue it, but the petition does, for it sets out that these bonds were issued in payment for building a court house, and this is admitted by the demurrer. This, we say, shows full authority to issue the bonds; for the county judge may contract to have it done on credit, and may issue evidences of indebtedness in liquidation of such indebtedness.

We have thus, as we think shown that the county judge has authority to issue bonds for the purpose set forth in the petition in this case, and that the judgment of the court below ought to be reversed and the demurrer overruled; and therefore, most respectfully ask this court to grant a rehearing in this case.

JUNE TERM, 1861. 167

Hull & Argalls v. The Co. of Marshall, and Wells & Christie v. The Same.

In one of the cases, there is a count which attempts to set out the consideration and facts leading to the execution of the bond, and another which declares upon it, as an instrument in writing made by the county, which was duly assigned by the payee to plaintiffs before maturity. In the other case there are six counts, being in form like those found in the books under the common law practice, on promissory notes. The demurrer in each case reaches the whole petition, and is not to each count separately. If either count was good, therefore, the demurrer should have been overruled. (*Darr* v. *Lilley*, 11 Iowa, 4, and cases there cited.) And I can find no precedent for assuming a state of facts stated in one count of a petition, to be applicable to another and different one, and predicating thereon an argument against the sufficiency of both or all. Then again, for any thing that I can know in a judicial manner, the bonds in the one case were issued for a consideraton other and distinct from that stated in the other.

Not only so, but it is admitted that these bonds were assigned for a valuable consideration, *bona fide*, to the plaintiffs before maturity. In other words, it is admitted by the demurrer that plaintiffs are innocent holders of this paper. Being such, the question of consideration is entirely immaterial. However invalid the bonds might be in the hands of Dishon, for the want or failure of consideration, plaintiffs are not affected thereby. The contract being in writing, a consideration is presumed, and of course the pleader is not required to aver it.

Plaintiffs must recover, therefore, unless the bonds upon their face are invalid, or what amounts to the same thing in this inquiry, unless under the law the county judge had no power to issue this character of paper.

In the first place, I maintain that from this record it does not appear whether these bonds were issued with or

without a vote of the people, as provided for in §§ 114 and 115 of the Code of 1851. If a vote was necessary, then I am bound to presume, in the absence of a contrary showing, that it was had. If it was not necessary, then of course the pleader need not state the authority. For if the power existed by the general law, the pleader is not required to set it forth. If the power could only be conferred by a vote, "the pleader may assume the needful circumstances until the contrary is pleaded." (*Ring* v. *Johnson County,* 6 Iowa, 265.) This was held in a case where the law clearly required that a vote should be taken. That this case settles the question, where it does *not* appear that the law required a vote, I think is beyond controversy.

But let us assume that these bonds were issued to Dishon under a contract entered into by him to build a court house; that there was no vote of the people, and that they were issued before he did the work. And still I maintain that the demurrer should have been overruled. To begin with, plaintiffs had no notice of any of these matters, and this ought to be conclusive of the question. But waiving this ground, impregnable as it is, I say that a vote of the people was not necessary, and that the county judge had the power to make the contract, whatever the popular will. Be it understood that I am not discussing the policy of the law: I have nothing to do with the fact that corrupt county judges abused that power, that it would have been better to require a vote, or in some manner to have guarded the authority conferred. I have no doubt that in some instances the power was grossly abused; but such abuses are more or less incident to the exercise of all powers where a large discretion is conferred, and it may be very impolitic, therefore, to thus legislate. But this is no reason why I should set aside a contract, made by the judge, in the absence of fraud, and thus violate well settled legal principles, to get around and obviate the effect of unwise legislation.

JUNE TERM, 1861. 169

Hull & Argalls v. The Co. of Marshall, and Wells & Christie v. The Same.

Now, the powers of the county judge are to be 'measured by the statute it is claimed and admitted. By this he is invested with the usual powers and jurisdiction of county commissioners. He is the accounting officer and general agent of the county, and as such is authorized to take the management of all county business; the care and custody of all county property; to superintend the fiscal concerns of the county, and secure their management in the best manner; to provide necessary rooms for his office and those of the treasurer and clerk, and for the District Court. Contracts made by the county, which are to be formally executed, are to be in the name of the county, and executed by the county judge in his official capacity. (Code of 1851, §§ 105–6 and 108.) If there is no regular court house, it is the duty of the county court to provide a place for holding the District Court. (§ 1573.)

By the law of 1843, (act of February 15, § 4,) power was possessed by the county commissioners to contract for the erection of a court house, and other necessary public buildings for the use of their county. And as the usual powers and jurisdiction of that board are conferred upon the county court, it follows that the power to provide for the erection of a court house is included. And so it was expressly held in *Brooks* v. *Napier*, County Judge, 7 Iowa, 425. The majority opinion "apprehends that there is no necessary conflict between that case and this." And yet I maintain that the case in 7th Iowa is, in principle, decisive of the very question now under discussion and in accordance with the position which I assume. Thus, it is expressly held that: "The county judge may enter into contracts for the erection of such buildings, (court house, jail, &c.,) binding the county thereby, without first submitting to a vote of the people of the county, the question of their adoption, or the propriety of incurring the expenditure of money necessarily involved in them." "There is no provision however, under

which the county judge may be required to submit to a vote of the people of his county, the question of building a court house, or the adoption of a plan on which he proposes to build it. The county may be in debt, and its warrants depreciated; the court house proposed to be built, as to the plan and cost of the same, may be altogether unsuited to the wants and to the means of the county; and yet, if the county judge chooses to contract for its erection, so far as we are able to discover, there is no limit to his discretion, and no means in the hands of the people to defeat it. If the proposed plan is submitted to the people, and is condemned by them, there is nothing to prevent the county judge from entering into the contract, in spite of their vote against it." And in that case it will be seen, that the county judge was petitioned to submit the question to a popular vote; that he refused, and that the relator applied for a *mandamus*, the information setting forth among other things, that the county treasury was bankrupt; that it would be necessary to borrow money to carry out the proposed contract; that a majority of the voters thought the proposed building was too large for the wants of the county, and the price proposed an extravagant outlay of money, involving the necessity of borrowing or oppressive taxation. In this case however, there is nothing to show that the building contracted for (if one was, but of which I know nothing,) was too large or too small for the wants of the people; whether it was good or bad policy to make said contract; whether the county was in or free from debt; whether the contract could be met and discharged from the ordinary revenue, or whether it involved oppressive taxation; nor, finally, that money would have to be borrowed to carry it out. That the cases are in conflict, I think must be most manifest.

Will it be said that the contract may be made without a popular vote, or in spite of a vote against the one proposed, but that the judge cannot undertake to pay for the work

done, otherwise than as the work progresses; or in bonds, promises to pay, or warrants due at different times, and that if he does so, such warrants or bonds are invalid? Or is it said in the same connection, that the warrants are void, because they bear ten per cent interest? To all these and similar positions I say, that the power to contract, carries with it necessarily, the power to provide the means to pay for the work to be done. That in this respect the county is like an individual; and as a municipal corporation it may be bound just as the individual. The county judge is the *general agent* of the county, and as such is entrusted with the *management of all county business*; he superintends the *fiscal affairs of the county*, and is to secure *their management in the best manner possible*. Having these general powers, he may do whatever is necessary to carry them out. If he acts indiscreetly or unwisely, the principal (the county) and not third persons, must suffer the consequences. And as to the interest, if more than he could agree to pay, this at the most would not vitate the whole contract, but only *pro tanto*. Not only so, but the law is, that " parties" may agree in writing for the payment of interest not exceeding ten cent on the one hundred by the year. (Act of 1853, § 2.) And " parties" as here used extends, in my opinion to bodies politic and corporate. I find nothing that restricts the county from agreeing to pay such interest. The powers conferred upon the county judge are certainly broad and general enough to include this. And I know of no reason why a county judge might not with much propriety, provide for the payment of a portion of county indebtedness at a future day, instead of making it all due immediately, and in doing so, undertake to pay a higher rate of interest than that recoverable upon the ordinary warrants.

But finally, these instruments are, in their legal substance, nothing more than the ordinary county warrants. They are more formal in their language, and so framed as to be

negotiated with greater ease and facility in the market. And yet after all, they are but warrants drawn by the proper and legally constituted financial agent of the county upon the county treasury. All that is said about "pledging the faith of the county;" about "the county treasurer being hereby authorized, directed and required to pay," &c;" about "the authority of the statutes of the State of Iowa," does not charge their legal character. The county would be bound to pay, if liable, without "pledge of its faith." And if the power to make the contract was conferred, the recitation that it was done by authority of the statutes could not make the promise more obligatory. Nor would any of these things, nor all of them combined, detract from the otherwise binding efficacy of the bonds.

I dissent for these reasons, and am unhesitatingly of the opinion that the judgments below should be reversed.