Mr. Justice WAYNE.
 

 This cause bas been fully argued. It is an action to recover tbe interest in arrears on coupons annexed to bonds wbicb were issued by Miami County, payable to tbe Peru and Indianapolis Railroad Company, or bearer, and wbicb is declared in tbe bonds to be. given for a loan of money. "W e
 
 *723
 
 are relieved from the task of 'considering several of the arguments of counsel and the pleadings on the record, believing, as we do, that the defendants are estopped from denying the declarations as to the purpose and cause for which, the bonds were issued, and that the coupon holders had a right to infer from the face of the bonds that they had been regularly issued by the County of Miami.
 

 It is not a new case to this Court, either in its facts or the principle involved. The object of this Court has been in cas^s of a like kind, and it is still its purpose, to give to the contracts of counties for the purchase of railroad stocks and for borrow-' ing money, to aid in the construction of railroads and other internal improvements, a strict interpretation of the legislative acts empowering them to do one or the other; but at the sanie time to give protection to the
 
 bona fide
 
 holders of such contracts as have been put on sale in the money market, by corporations or by counties acting corporately, against their efforts to be relieved from the responsibilities of official acts, in putting such papers into circulation, for capitalists to invest money in them, on assurances that the principal and interest would be paid accordingly.
 

 We repeat now, as appropriate to the subject-matter of the case in hand, as it was in the cáse in which this Court said it, that corporations are as strongly bound as' individuals are to a careful adherence to truth in their dealings with mankind, and that they cannot by their representations or silence involve others in onerous engagements, and then defeat the calculations and claims their own conduct had superinduced.
 
 Zabriskie
 
 vs.
 
 Cleveland, Columbus and Cincinnati Railroad Company,
 
 (23 How., 400). In our construction of the Act of Pennsylvania to incorporate the Northwestern Railroad Company, the Court said, that neither privileges, powers, nor authorities, can pass, unless they are given in unambiguous words, and that an act giving special privileges must bé construed strictly. That in case a sentence is capable of having two meanings,, a construction must be given favorable to the public. However, that in applying those' principles of construction, it must be done with reference to the
 
 *724
 
 subject-matter contemplated by the Legislature as a whole, so as .not to allow its manifest purpose and design to be defeated by denying the use of means by which the main object could only be accomplished.
 

 In our leading case upon the subject, that of the
 
 Commissioners of Knox County
 
 vs.
 
 Aspinwall et al.,
 
 (21 How., 539), the suit hav ing been brought for the interest due upon coupons annexed to one hundred and forty-two bonds, in which the main ground of defence was, that a Board, of Commissioners' had not power to execute them, and that on such account they were not binding upon the County of Knox, our answer and judgment was,- that the bonds on their face import a compliance with the law under which .they were issued; and that the purchasers of them were not bound to look further for evidence of a compliance with the conditions annexed to the grant- of power to issue them.
 

 , In' confirmation of such conclusion we then cited the case of the
 
 Royal British Bank
 
 vs.
 
 Tarward,
 
 (6 Ellis & Blackburne, 327), decided in 1856 in the Exchequer Chambers, in - error from the Court of- Queen’s Bench, the decision of which we will now give in full, on account of the principle and its peculiar application to the pleadings in the - case before us. Jervis, C.'J. “I am of the opinion that the judgment of the Court of Queen’s Bench ought to be affirmed. I am inclined to think the question which has been principally argued, both here and in that Court, does not necessarily arise, and need not be determined. ■ My impression is, though. I will not state- it is a fixed opinion) that the resolution set forth in the replication goes far enough to satisfy the requisites of the deed" of settlement..,-The deed allows the .directors ^o borrow on bond such sums of money as shall, from time to time, by a resolution passed at a general meeting of the Company, be authorized to be borrowed,- and the replication shows a resolution passed at a general meeting authorizing the directors to borrow on bond, such sums for such periods and ■rates of interest as they might deem expedient, in accordance with the deed of settlement'and the Act of Parliament; but the resolution does not otherwise define the amount to be borrowed. That seems *.o me to be enough. If that be so, the other ques
 
 *725
 
 tion does not arise. But whether it be so or not, we need not decide, for it seems to us that the plea, whether we consider it a confession and avoidance, or a special
 
 non est factum,
 
 does not raise any objection to the advance as against the Company. We may here take for granted that the dealings with these companies are not like dealings with other partnerships, and that the parties dealing with them are bound to read the statute and deed of settlement. But they are not bound to do more. And the party here, on reading the deed of settlement, would find, not a prohibition from borrowing, but a permission to do so on certain conditions. Finding that the authority might be made complete by a resolution, he would have a right to infer the fact -of a resolution authorizing that, which on the face of the document, appeared to be legitimately done.”
 

 At an ensuing term of this Court we had under consideration the case of
 
 Bissell
 
 vs.
 
 City of Jeffersonville,
 
 and it was fully discussed by us in connection with the English and our own case of AspinwaH, &c. We said there: "When the contract has been ratified and affirmed, and the bond issued and delivered to the Railroad Company in exchange for stock, it was then too late Id call in question the fact determined by the Common Council —and,
 
 a fortiori,
 
 it is too late to raise that question in a case like the present, where it is shown that the plaintiffs are holders for value. Certified copies of the proceedings were exhibited to the plaintiffs at the time they received the bonds, &c., and whether we look to the. bonds or recorded proceedings, there is nothing to indicate any irregularity, or to raise a suspicion that the' bonds had not been issued pursuant to lawful authority. We hold that the Company and its assigns, under the circumstances of the case, had a right to assume that they imported verity.” It would be difficult to find cases more controlling of that before ns than those which have just been cited.
 

 The same ruling was made by the Court in the case of the
 
 Commissioners of the County of Knox
 
 vs.
 
 Wallace,
 
 (2 How., 546) It was substantially repeated in
 
 Aspinwall et al.
 
 vs.
 
 The Commissioners of the County of Davis.
 
 That was brought to this Court from the Circuit Court of Indiana upon a' certificate of .a
 
 *726
 
 division of opinion between tbe judges. The points were, whether by the Act of Incorporation of the' Ohio and Mississippi Railroad, and the amendments to it of January, 1849, any right to county subscriptions had been vested in the Company, to ex-' elude the operation of the Constitution of Indiana, which took ■effect on the 1st of November, 1851, and whether the Railroad Company had acquired any such right to. subscription of the defendant as was protected by the Constitution of the State. Both questions were answered negatively. But we said it was done reluctantly,.for the subscriptions to the stock by the Board of Commissioners were made in good faith to the Railroad Company, and also sold by it, and purchased by the plaintiff in confidence of their validity.
 

 With these cases on our minds, we will now proceed to give the facts and circumstances of the ’ present case, that .it may be seen whether there is any thing in them to take it out of our decisions.
 

 The abstracts of it by both counsel, are so similar that either may be used without giving to the other any advantage.
 

 It is an action of assumpsit, brought by the plaintiff in error, on interest warrants or coupons, annexed to fifteen bonds of the county of Miami for $1,000 each, bearing date the 21st of August, 1851, redeemable in ten years from the 1st of September following. The bonds were payable to the Peru and Indianapolis Railroad Company, or bearer, at the office of the Treasurer of Miami County, in Peru, bearing an interest of ten per cent, per annum, payable semi-annually at the same place. The suit is for a failure to pay coupons for the years 1857 and 1858, amounting to $8,000, the interest accrued before having been paid by the Railroad Company. It is averred in the declaration that' the bonds had been issued by Miami County, in pursuance of powers conferred on its Board of Commissioners by the laws of Indiana, and particularly by an Act approved January 6th, 1849, entitled an Act to authorize the Commissioners of Hamilton, Miami, and Tipton Counties to borrow money. Howard County was afterwards permitted to borrow money The language of the .act authorizes the loaning of
 
 *727
 
 money to the Board to any amount not exceeding $50,000, from time to time, at any rate of interest, not more than ten per cent, per annum. The second section is, that all persons loaning money to the- counties or either of them, are authorized to receive any rate of interest' upon such loans as may be 'agreed upon, not exceeding ten per centum.
 

 The Peru- and Indianapolis Railroad Company was incorporated in January, 1846. The 28th section of the charter authorizes the County Commissioners of each county through which the road shall pass to take, by an order for either county, as much stock in it as they may think proper. After the act permitting the counties to borrow money had been passed,' the Railroad Company, urged by the condition of its finances, appointed a committee to apply to the auditors of the Counties of Hamilton, Miami, and Howard, to call special sessions of the Boards of the Commissioners of their respective counties-to consider proposals, which they wished to make. In a meeting afterwards held, the committee stated that they were required to ask from the counties additional subscriptions to the stock of the Railroad Company. From the Counties of Hamilton and Miami respectively, twenty thousand dollars, and from Howard County ten thousand dollars. The committee-then said that their subscriptions would be received, if the respective counties would issue bonds bearing ten per cent, interest per annum, redeemable in ten years, with coupons annexed to them, which the railroad would receive if the bonds were made payable to the company, or bearer, for the purpose of borrowing money upon ■ them, to be -applied to the payment of the stock which either of the qounties should subscribe for. As a further inducement to the counties to do -so, the committee stated that upon the subscription being made, and the bonds being issued, that the Railroad would issúe stock to the county for its subscription, credited in full to the amount of its bonds; and for the issue of the bonds, that the President of the Railroad would execute an obligation binding the company to pay the interest annually upon the bonds as it became due, until the principal became payable and then ft e principal also; but that when
 
 *728
 
 both principal and interest had been paid, by the Railroad Company, that the counties would return to it the stock certificates which they had received when the bonds were issued if it did not wish to retain it. And it was further agreed between the parties, if the counties, or either of them, should at any time before the redemption of the county bonds by the railroad company elect to surrender to it its obligation, and assume the payment of the interest that shall accrue afterwards, and the principal also when it became due, that the stock issued to the counties should become absolute in their favor, entitling them to all future dividends on the stock. But that until such assumption had been undertaken and performed, that the stock was merely to be held as a security by the counties for the performance of the stipulation of the Railroad Company, but not entitling them to dividends, though it would give them the right to vote the stock in elections for directors. These proposals were considered by the Auditor and Board of Commissioners .of Miami County. It resulted in an issue by them of twenty bonds, one thousand dollars each, in which it is declared in the bon Is
 
 “
 
 that there is due to the President -and Directors of the Peru and Indianapolis Railroad Company, or bearer, one thous- and dollars from the County of Miami, payable in ten years from the first of September, 1851,” this bond being issued for a lasa of the amount to the county, as authorized by an act of the State of Indiana, permitting the Commissioners of Hamilton, Miami and Tipton Counties to borrow money. The coupons or interest warrants annexed to the bonds are in these words : -
 

 Auditor’s Office,
 
 Miami County, Peru, Indiana.
 

 The Treasurer of said county will pay the legal holder hereof one hundred dollars on the first day of September, 1857, on presentation thereof, being for interest due on the obligation of said county, No. 16, given to the Peru and Indianapolis Rail road Company. By order of the Commissioners.
 

 IRA MENDENHALL,
 
 County Auditor.
 

 The interest warrants, payable on the 1st September, 18.58, arc like the preceding; and others of the same kind, are annexed to the other fifteen bonds legally held by the plaintiff in error.
 

 
 *729
 
 Tbe bonds were delivered, to tbe Railroad Company, were received by it in payment of the certificate of stock, and tbe County of Miami was credited with $20;000 upon tbe certificate Tbe Railroad Company then offered them for sale, transferred them to purchasers as commercial securities by endorsement, and tbe plaintiff in error bought them in tbe full confidence that the consideration for which they bad been issued was truly expressed on tbe face of tbe bonds. Tbe county retained tbe stock certificate and voted it on tbe election for directors as its own. Thus matters stood between tbe Railroad. Company and the County of Miami, both being satisfied with what had been done, and that- they bad acted conformably to' their respective powers, until tbe Railroad, ceased to pay to tbe holders tbe interest warrants.
 

 Upon tbe.trial of tbe case, tbe defendants filed a plea of nonassumpsit, and the plaintiff joined issue by a similiter. At tbe same time tbe' defendants put in several pleas, affirming that several irregularities bad been committed by tbe Board of Commissioners of Miami County and tbe Railroad Company, in their negotiation and proceedings for tbe issue t of- tbe bonds and interest warrants, by tbe force of which it .is declared that .the bonds were void at law, and that they were purchased by tbe plaintiff with notice of these irregularities.
 

 ■'We have examined these pleas critically, and find tbe facts stated-in each to be imputations, only calculated to raise supposed equities between Miami County and tbe Railroad Company, in which the plaintiffs in error, as the legal holders of the-bonds and coupons, can in no event have any concern, even if it be admitted that they bad notice of such irregularities when they bought, as all of them relate to circumstances contradictory to tbe declarations upon tbe face of tbe bonds.
 

 Though tbe proposals, or contract as it is termed in tbe record, tor additional subscriptions of stock are confusedly expressed, there can be no doubt that it was its intention to solicit subscriptions, and that it was so understood by tbe Board of Commissioners of Miami County when it issued tbe bonds; and that in furtherance of sucn purpose, tbe parties proceeded to devise tbe
 
 *730
 
 means to pay for the subscription by borrowing money. In doing that there was nothing irregular in the transaction. Both parties seem to us to have acted within their respective powers : the Railroad within its charter to allow the counties to subscribe for stock in it, and the County of Miami to do so and according to the power given to it to borrow money. When the Railroad undertook to pay the interest upon the treasury bonds and the principal also when that became due, it was substantially a loan to the county from the time of the execution of the bonds until their maturity, though it was provided that the county might then upon the cancellation of these bonds decline to return the certificate of stock which had been issued to it.
 

 The narrative of the negotiation which led to the issue of the bonds and interest warrants, brings the case, by the declaration in the bond as to the object and purpose for which they were issued, so entirely within what we have shown to be the law in such cases as to the inference which may be made from the face of the bond, of ijfcs having been regularly executed by the party having authority to do it, that we are relieved from the task of considering much of the argument made to us by counsel; and from examining the special pleas which were put in by the defendant,-or the reasoning of the Court upon the third and fourth pleas upon which it rested its judgment for the dismissal of the plaintiff’s case. If the contract and bonds are considered in connection with the authority of the Board of Commissioners of Miami County to issue them, it must be obvious that several of the points presented to us by the counsel of the defendant do not arise in the case. For instance, whether the Board of Commissioners of Miami County had power to issue them at the time and for the purpose for which in was done, or that the bonds and interest warrants, by having been endorsed to the plaintiff by the Railroad Company were subjected to the revised statutes of Indiana, making certain promissory notes, &c., negotiable by endorsemént thereon; so as to vest the interest jn the contract to the assignee, and permitting the obligor to set up any defence to the obligation against the assignee, that he could have done against the original obligee, or that it was necessary to them
 
 *731
 
 that the bonds were issued by virtue of a special statute, and. if that did not exist, that the bonds may be held to be void. •
 

 It is true that all of these points were as well argued by the counsel of the defendants as the circumstances of the case permitted, but in every instance, either of argument or of pleading, the point of estoppel, as made by the plaintiff’s counsel in the Court below, and renewed here by him with vigor by the citation of many cases, was not directly met by the counsel of the defendant. The first point of the plaintiff’s counsel was, that even if the bonds had been issued irregularly, and not in strict conformity with the power of the county to borrow money, that the defendant is, nevertheless, estopped by the bonds themselves, which, on their face, express that they were issued for a loan of the amount to the county, as authorized by the Act of the General Assembly to borrow money, and that such bond§ being habitually received and passed as commercial securities, and being
 
 bona fide
 
 in the hands of the plaintiff, that they were entitled to recover the amount of interest sued for, notwithstanding there might be equities between the original parties to the transaction. It is not necessary for us to follow out the ■plaintiff’s argument in this particular, thinking it, as we do, conclusive. We think that the bonds in this case, with interest warrants annexed, are commercial securities, though they are not in the accustomed forms of promissory notes or bills of exchange; that the parties intended them to be passed from hand to hand to raise money upon them, so that a full title was intended to be conferred on any person who became the legal holder of them, and that the original maker under such circumstances has no equity to prevent the recovery of the interest.
 

 But the réal point in this case, as made by the counsel of the plaintiff in error, and sustained in argument by numerous adjudicated cases, was, that as it is declared in the bonds that they were issued by the Board of Commissioners of Miami County by order or resolution, pursuant to the statute authorizing the County to borrow money, passed at a regular meeting of the Board, to be used by the .Peru and Indianapolis Railroad, payable to the Company, or bearer, for a loan to the County that
 
 *732
 
 the
 
 Iona-fide
 
 holders of the bonds, whether so by endorsement or delivery, had a right to infer that the bonds had been lawfully issued, by which the County of Miami is estopped in a suit for the recovery of the interest from denying by. pleas that its bonds had been issued to the Peru and Indianapolis Railroad for a loan of money to the County of Miami. We think and adjudge that the recitals in the bonds are conclusive, consti-' tuting an estoppel in pais upon the defendants in this suit. In support of this conclusion, we cite the following cases:
 
 Girard
 
 vs.
 
 Bradley,
 
 (7 Ind., § 600);
 
 Reeves
 
 vs.
 
 Andrews,
 
 (Ibid., 207);
 
 Frances
 
 vs.
 
 Porter,
 
 (218);
 
 May
 
 vs.
 
 Johnson,
 
 (3 Ind., 448);
 
 Trimble
 
 vs.
 
 State,
 
 (4 Black, 435); (8 Blackford, 258);
 
 Ryan
 
 vs.
 
 Vanladingham,
 
 (7 Ind., 416; 24 How., 375); (23 How., 381); (29 Connecticut Rep.);
 
 Society of Saving
 
 vs.
 
 City of New London,
 
 (103); (1 Vesey, senior, 123, 8 Blackf., 47). It is the opinion of this Court that the defendant is estopped from setting up the defences taken as set forth in the transcript of the record of this case, and that the judgment of the Court below sustaining the demurrer should be, and is hereby reversed and annulled, and that the case should be remanded to that Court, with directions to award a
 
 venire facias de novo.