78 U.S. 139 (1870)
11 Wall. 139
SMITH
v.
SAC COUNTY.
Supreme Court of United States.

*143 Mr. J.N. Rogers, for the plaintiff in error.
Mr. Galusha Parsons, contra.
*146 Mr. Justice MILLER delivered the opinion of the court.
The plaintiff sets out in his petition all the proceedings, by vote of the county, which he deems necessary to authorize the issue of the bonds, with a copy of one of the bonds and coupons, and after describing, by number and otherwise, twenty-five of the coupons, avers that he is the owner and holder of them, that he received them in good faith before maturity and paid value therefore, and that the same are valid and legal claims against the county.
The defendant answers, denying each and every allegation of the petition, and then sets up that the bonds were issued without authority of law, failure of consideration, and other defences.
The denials of the first part of the answer, though not strictly in the form required by the rule, put in issue every material fact alleged in the petition. It therefore made an issue on the plaintiff's allegation that he became the holder of said coupons before maturity, and that he paid value therefor, so far as that might become material to be shown on the trial.
The parties having by stipulation submitted the case to the court without a jury, and the court made a special finding of facts, on which it held the law to be for defendant, and rendered a judgment accordingly, the question before us is, whether the judgment is justified by the facts found?
Treating the bonds and coupons sued on in this case, *147 which are payable to bearer, as negotiable paper, and conceding to its fullest extent the protection which commercial usage throws around such paper in the hands of a bonâ fide purchaser for value before maturity, it is nevertheless undoubtedly true that circumstances may be shown in connection with the origin of such paper, which will devolve upon the holder the burden of showing that he did give value for it before maturity. This principle is asserted in the text books of Chitty,[*] Story,[] Parsons,[] and others, and is so laid down and sustained by numerous citations of authorities by the learned American annotator of Smith's Leading Cases, p. 752. In one of the latest of the English cases, Hall v. Featherstone,[§] Pollock, C.B., says: "If there are any circumstances in the nature of fraud or illegality which can be left to the jury, proof of these circumstances will cast on the plaintiff the onus of showing that he gave value for the bill." To which Martin, Baron, added: "I think there was, at the close of the defendant's case, evidence for the jury in support of the plea. The authorities have established a principle which is contrary to the general rule, by which a defendant is bound to prove all the facts necessary to constitute a defence." And Bramwell said: "The cases have established that if there be fraud or illegality in the inception of a bill or in the circumstances under which it was taken by the person who indorsed it to plaintiff, he must prove consideration. That is established beyond controversy."
With this statement of the law on that subject, we approach the examination of the facts found by the court.
The fifth finding is, "that the county judge in fact signed, sealed, and delivered said bonds and coupons at Fort Dodge, in the County of Webster, and State of Iowa, and not within the County of Sac: and that the contractor, Meservy, gave one of said bonds as a gratuity to the county judge as soon *148 as the same were delivered by said county judge to said Meservy, and no court-house was ever built by said contractor or any other person in pursuance of said contract."
Now the coupons sued on, being part of the transaction here referred to, was there not enough in what the court finds to devolve upon the plaintiff the necessity of showing that he purchased for value? In the language of Chief Baron Pollock, "were there not circumstances in the nature of fraud, proof of which cast on the plaintiff the onus of showing that he gave value for the bonds?" They are circumstances from which no court or jury could fail to find fraud in the inception of the bonds on which he sued. Besides he had, perhaps unnecessarily, but expressly, averred that he had paid value, and this had been denied by defendant, so that the issue was fairly raised by the pleadings. He not only failed to prove that he gave value, but it does not appear that he offered any evidence to that effect. The bill of exceptions, which recites much that was offered and submitted in evidence, is silent on this point.
The sixth finding of the court is that the plaintiff was, at the time of commencing this action, and still is, the holder and owner of the twenty-five coupons declared on in the petition, that he became such holder by transfer thereof to him before maturity, and after the entry of the proceedings on the minute-book, &c.
It must be taken, then, that plaintiff did not show that he was a holder for value. There is neither finding nor evidence that he gave value, and the statement that he became the holder by transfer before maturity, does not imply that he was a purchaser in any sense or received them on any consideration whatever.
Under these circumstances the plaintiff can occupy no better position than Meservy, to whom the bonds were originally delivered by the county judge.
If Meservy had been plaintiff, ought the judgment to have been other than what it is on the record presented to us?
He contracted to build the court-house and never built it *149 or attempted to do so. He received under this contract ten thousand dollars of what purported to be the bonds of the county. These bonds were signed, and the county seal, which was necessary to their validity, affixed by a person assuming to act as county judge in another county, at the place where Meservy resided, and as soon as the transaction was completed one of the bonds was given by Meservy as a gratuity to the person who had thus played the part of county judge. That the county judge should have left his own county and his official place of business, should have put the seal of the county in his pocket, and gone to meet Meservy in a place without the limits of his jurisdiction, should there have concocted these bonds, and on delivering ten of them to Meservy have received back one of them without any consideration but Meservy's satisfaction at the completion of the transaction, and that this should create in Meservy's favor a right of action against the county, is more than we can affirm. That the court-house was not built is only the natural result of such a proceeding. That the bonds should turn up in the possession of some one else was to be expected. But to hold that, after all this was shown in defence, such holder should have a judgment on those bonds, without any proof that he purchased them for value or that he gave any consideration for them at all, is in our judgment pushing the doctrine which gives sanctity to negotiable paper beyond any just principle or any decided case.
We think the judgment of the Circuit Court was right, and it is accordingly
AFFIRMED.
Mr. Justice CLIFFORD, dissenting.
Coupons attached as interest warrants to bonds for the payment of money lawfully issued by municipal corporations are negotiable instruments, and as such, when they are payable to order and are indorsed in blank, or are made payable to bearer, are transferable by delivery and are subject to the same commercial rules and regulations, so far as *150 respects the title and rights of the holder, as negotiable bills of exchange and promissory notes.[*]
Holders of such instruments, if the same are indorsed in blank or are made payable to bearer, stand upon the same footing as the holders of negotiable bills of exchange or promissory notes, and are as effectually shielded from the defence of prior equities between the original parties to the instrument, if unknown to them at the time of the transfer, as the holders of any other class of negotiable instruments.[]
Such instruments are protected from defences of the kind when in the possession of an indorsee, not merely because they are negotiable but also because they are regarded as commercial instruments, and as such are favored as well on account of their negotiable quality as their general convenience in mercantile affairs.[]
Bonds for the payment of money, with interest warrants attached, are now universally classed with bills of exchange and promissory notes as negotiable instruments, and as such are everywhere encouraged as a safe and convenient medium for the settlement of balances among mercantile men, and any course of judicial decision calculated to withdraw such instruments from the operation of the general rules of commercial law usually applied in controversies respecting the title to the same, or to restrain or impede their free and unembarrassed circulation, would be contrary to the soundest principles of public policy.[§]
On the first day of October, 1860, ten bonds, each for the sum of one thousand dollars, payable to bearer, one each succeeding year till the whole sum was paid, with interest at the rate of ten per centum per annum, were issued by the defendant corporation "for the purpose of erecting a court-house *151 in Sac City, the county seat of the county," as alleged in the recitals of each bond. They were numbered from one to ten inclusive, and they also contained the recital that they "were issued by the county in accordance with a vote of the legal voters thereof" at a special election, holden on the day therein mentioned, pursuant to a proclamation made by the county judge, according to the statutes of the State in such case made and provided.
Annexed to the several bonds were the coupons, one or more, as provided in the same, for the payment of the annual interest, and the plaintiff being the holder of twenty-five of those coupons instituted the present suit to recover the amount, together with six per cent. interest from their maturity, and he alleged in his declaration that he was the holder and owner of the coupons therein described; that he received the same in good faith before their maturity, and that he paid value for the same at the time of their transfer; that the bonds and coupons were issued by the county under and by virtue of a legal and competent authority conferred upon the officers and agents of the county, and that the same are valid and legal claims against the defendant corporation.
Most of the allegations of the declaration are denied in the answer, but the defendants do not specifically deny that the plaintiff paid value for the coupons at the time he became the holder and owner of the instruments. They deny that any such election as that set forth was ever called or held, or that the county judge had any authority to call such an election or to make any contract to build a court-house or to issue any such bonds or coupons, or that any such bonds or coupons were ever issued, and they append to those specific denials a general denial of each and every allegation of the declaration, which really amounts to nothing in any case in that jurisdiction, as the code of the State, which is adopted by the Circuit Court, provides that every material allegation of the declaration not denied in the answer shall be considered as admitted.[*] Where the general issue may *152 be pleaded the rule would be different, but the code expressly abolishes the general issue and adopts the rule that every material allegation of the declaration is admitted unless it is specifically denied in the answer.[*]
Apart from the preceding denials, the defendants also allege that the bonds and coupons were issued without authority, and that the plaintiff, at the time he purchased the same, had full knowledge of those facts.
Special matters in avoidance of the claim of the plaintiff are also set up as a defence in the third article of the answer, in which the defendants allege that the county judge, or the person claiming to act as such, entered into a contract for the building of a court-house at Sac City, the county seat of the county, to be commenced and completed at the times therein specified; that the county judge agreed and undertook in behalf of the county to pay the contractor for erecting and completing the court-house the sum of ten thousand dollars, and to issue the bonds of the county to that amount, as described in the declaration; that the bonds and coupons were subsequently issued in pursuance of the contract, and that they were delivered to the contractor, but that the contractor wholly failed and refused to build the court-house, whereby the consideration of the bonds and coupons wholly failed; and the defendants allege that the plaintiff, at the time he purchased the bonds, had full and complete knowledge of all these facts, and that he took the same subject to the rights and equities of the defendant corporation.
Before the trial the parties filed a stipulation in writing, agreeing that the case might be heard and determined by the court, without the intervention of a jury, and the record shows that it was so determined. Where the case is so tried the finding of the court may be either general or special, and the express provision is, that the finding shall have the same effect as the verdict of a jury.[]
Exceptions may be taken to the rulings of the court made in the progress of the cause, and when the rulings are duly *153 presented by a bill of exceptions, they may be re-examined in this court by writ of error, if it is an action at law, or by appeal if it is a suit in equity. Evidently, when the finding is general, the legal effect of the proceeding is in every respect the same as the verdict of a jury at common law, as nothing is open to re-examination except the rulings of the court; but when the finding is special, it is expressly enacted that "the review may also extend to the determination of the sufficiency of the facts found to support the judgment."
Special findings were made by the court, from which it appears that the questions, whether a court-house should be erected, to cost ten thousand dollars in the bonds of the county, and whether a tax sufficient to liquidate the demands as they became due should be annually levied, were duly submitted to the voters of the county; that the propositions were adopted, at a special election held on the day therein mentioned, by a majority of all the votes cast at the election, and that the proposition and the order for the submission of the same, together with a statement of the result of the election, were afterwards entered and recorded at large in the minute-book of the county court, as alleged by the plaintiff; that the county judge made the contract for the erection of a court-house, as alleged, and that he executed in behalf of the county the ten bonds described in the declaration, affixing thereto his signature as such county judge and the lawful seal of the county, and that he delivered the same to the contractor, in pursuance of the terms of the contract, and that correct copies of the bonds and coupons are contained and set forth in the record. Had the findings of the court stopped there, all undoubtedly would agree that the plaintiff ought to recover, as it is universally admitted that the transferee of a negotiable instrument, made payable subsequent to its date, holds it clothed with the presumption that it was negotiated to him, at the time of its execution, in the usual course of business and for value; and without notice of any equities between the prior parties to the instrument.[*]
*154 Such is the settled rule of commercial law applicable to negotiable instruments, and it was so framed and is so administered in order to encourage the free circulation of negotiable paper by giving confidence and security to those who receive it for value, and this principle is so comprehensive in respect to such negotiable instruments as pass by delivery, that the title and possession are considered as one and inseparable, and in the absence of any explanation, the law presumes that the party in possession holds the instrument for value until the contrary is made to appear, and the burden of proof is on the party impeaching his title.[*]
In the ordinary course of business the holder is presumed to be primâ facie a holder for value, and he is not bound to introduce any evidence to show that he gave value for the instrument until the other party has clearly proved that the consideration of the instrument was illegal, or that it was fraudulent in its inception, or that it had been lost or stolen before it came to the possession of the holder.[]
Possession, even without any explanation, is primâ facie or presumptive evidence that the holder is the proper owner or lawful possessor of the instrument, and Judge Story says that nothing short of fraud, not even gross negligence, is sufficient to overcome that presumption and invalidate the title of the holder as inferred from possession.[]
In this last case Lord Denman said: The owner of a bill is entitled to recover upon it if he came by it honestly, and that fact is implied primâ facie by possession, and to meet the inference so raised, fraud, felony, or some such matter, must be proved.[§]
*155 Coupon bonds of the ordinary kind, payable to bearer, said the court in the case of Murray v. Lardner,[*] pass by delivery, and a purchaser of them in good faith is unaffected by want of title in the vendor, adding, what is undoubted law, that the burden of proof on a question of such faith lies on the party who assails the possession.[]
Apply those rules in a suit in the name of the transferee against the maker, and it is clear that the plaintiff, where the case is tried to the jury under the general issue, has nothing to do except to prove the signatures to the instrument and introduce the same in evidence, as the instrument goes to the jury clothed with the presumption that the plaintiff became the holder of the same for value at its date in the usual course of business, without notice of anything to impeach his title.[]
Clothed, as the instrument is, with those several presumptions, the plaintiff is regarded as a bonâ fide holder for value, without notice of any equities between the antecedent parties, and therefore is entitled to recover upon the instrument notwithstanding any defect or infirmity in the title of the person from whom he derived it, as, for example, even though such person may have acquired it by fraud, or even by theft or robbery.[§]
Comment was made at the argument upon the matter stated in the third finding, that the order for the submission was not, in fact, recorded in the minute-book of the county court at the time it purports to have been entered; but the same finding shows that it purports to have been recorded at that time; and the sixth finding shows that the plaintiff became the holder and owner of the twenty-five coupons described in the declaration, before maturity, and after the entry of the proceedings in the minute-book, which shows to a demonstration that he, as the transferee of the coupons, *156 cannot be affected by any delay of the recording officer in entering the proceedings in the minute-book of the county court.
Money may be borrowed by a county to aid in the erection of public buildings, and it is well settled law that a municipal corporation, in exercising such an authority, may issue its bonds as the means of accomplishing the object.[*]
When a corporation has power, under any circumstances, to issue negotiable securities, the settled rule in this court is that the bonâ fide holder has a right to presume that they were issued under the circumstances which give the requisite authority, and they are no more liable to be impeached for any infirmity in the hands of such a holder than any other commercial paper.[]
Objection to the validity of the bonds and coupons is also made because the third finding of the court shows that the proceedings were not recorded till after the county judge had ceased to have jurisdiction over the financial business of the county. Reference is there made to the fact that the power to make such orders and to submit such questions to the people of the county had, before the proceedings were recorded, been transferred from the county judge to the supervisors of the county, but this court held, in the case of Supervisors v. Schenck,[] that such an irregularity would not invalidate such securities in the hands of subsequent holders without notice, and there can be no doubt that the rule as there laid down is correct. By the findings it appears that the plaintiff became the holder and owner of these coupons before maturity and after the proceedings were correctly entered in the minute-book, and it is not found, nor could it be, that he had any notice whatever of the supposed irregularities.[§]
*157 Evidence that he had notice of any defect in the title is entirely wanting, but the case of the plaintiff in respect to the payment of value does not depend solely nor chiefly upon the presumption to that effect, which always arises in favor of a transferee from the possession of the instrument. Usually that presumption is considered sufficient, but the case of the plaintiff is much strengthened from the fact that the allegation in the declaration that he paid value for the coupons is not specifically denied in the answer. Taken together, as these several matters must be, they establish the conclusion that the plaintiff did pay value for the coupons at the time of the transfer, and if so, then he clearly is entitled to recover, as it is expressly found by the court that they were transferred to him before maturity, and it is not pretended that he had any notice whatever of the supposed defects in the proceedings, or of any equities between the obligors of the bonds and any prior holder of the coupons.
No court-house was ever built by the contractor, but a valid contract for the erection of such a public building was made between the contractor and the county judge, acting in behalf of the county, at the time the bonds and coupons were executed and delivered, and it is well-settled law that such an executory contract is a good consideration for a negotiable instrument, and that the failure to perform the contract is no defence to the negotiable instrument in the hands of an innocent holder. If one will issue his negotiable paper and send it into the world in consideration of an engagement of the party with whom he deals to do some act for his benefit in the future, he declares in effect that he will pay the note or bill according to its terms to any one who shall become the holder for value in the usual course of business.[*]
Considerations founded upon reciprocal promises of the parties are of common occurrence in business, and bills and notes supported by such considerations have always been held valid, and the principle is as applicable to corporations as individuals.
*158 Interest warrants or coupons, each for the sum of one hundred dollars for the annual instalments of interest, were annexed to each bond, payable at the Metropolitan Bank in the city of New York, and the concluding recital of each bond was as follows: "In witness whereof I, Eugene Criss, county judge of said County of Sac, have hereunto affixed my name and caused the seal of Sac County to be attached, at Sac City, the first day of October, A.D. one thousand eight hundred and sixty."
Title and possession of such coupons are one and inseparable, as the holder is entitled to the same privileges and immunities as an indorsee having taken a note by indorsement in the course of business before it has become due. He is not subject to any equities as between the promisor and the original payee, nor to the set-off of any debt, legal or equitable, which the latter may owe to the former.
By giving a negotiable instrument payable to bearer at a future day the maker of the instrument promises to pay the amount to any person to whom it may be transferred before the day of payment, without claiming to set-off any demand which he then has or may acquire against the promisor. Possession is plenary evidence of title "until other evidence is produced to control it."[*]
Where the theory that the plaintiff paid value for the instrument depends solely upon the primâ facie presumption arising from the possession of the instrument the defendant may, if the pleadings admit of such a defence, prove that the instrument originated in illegality or fraud, and the rule is, if he establishes such a defence, that a presumption arises that a subsequent holder gave no value for it, and it is also true that such a presumption will support a plea that the holder is a holder without consideration, unless the presumption is rebutted by the plaintiff by showing that he gave value, in which event the plaintiff is still entitled to recover.[] *159 But the defendant is not permitted to put the plaintiff to proof of the consideration he gave for the instrument unless the defendant can prove that the instrument was obtained from the defendant or from some intermediate party by undue means, as by fraud or force, or that it was lost or stolen, or that it was originally infected with illegality.[*]
Nothing of the kind was found by the Circuit Court, and the only evidence introduced to support any such theory was what is detailed in the fifth finding of the court, by which it appears that the county judge signed, sealed, and delivered the bonds and coupons to the contractor at Fort Dodge, in the county of Webster, in that State, and not in the county of Sac, as recited in the respective bonds; and that the contractor gave one of the bonds as a gratuity to the county judge as soon as the same were delivered to him by the contractor.
Such evidence, if it had been introduced to a jury, might possibly have had some slight tendency to prove fraud in the inception of the instruments, and it may also be conceded that the fact reported that the contractor gave one of the bonds to the county judge, would have been admissible in evidence, as a circumstance tending to prove the same theory, but if the jury did not find that the instruments were fraudulent in their inception a court of errors could not supply the omission, as the act of Congress does not give to this court power to do more than "to review the questions presented in the bills of exceptions and to determine, where the finding is special," whether the facts found are sufficient to support the judgment.
Unless the finding is special the act of Congress does not give this court jurisdiction to re-examine anything except the rulings of the court, but when the finding is special the court may also determine the question whether the facts *160 found are sufficient to support the judgment, showing to a demonstration that the special findings of the court are regarded as governed by the same rules as the special verdict of a jury.
They must be governed by the same rules as a special verdict because they are required to be reviewed "upon a writ of error," where the suit is an action at law and the twenty-second section of the Judiciary Act provides that there shall be no reversal of a judgment in an action at law for any error of fact in any case removed here under that section.[*]
Forty-five years ago this court decided that matters of fact in actions at law, brought here by writ of error, could not be submitted to the judgment of this court, and the rule adopted on that occasion has never been qualified by any subsequent decision.[]
Authority to determine issues of fact brought here under that provision does not exist in this court, no matter what may be the evidence as reported in the record, as the power to try and determine the facts is, by the express terms of the act, vested in the Circuit Court and not in the Supreme Court. All this court can do is to re-examine the rulings, if any, presented in the bill of exceptions and to determine whether "the facts found," that is, the facts found by the Circuit Court, are sufficient to support the judgment rendered thereon by that court; and in making that determination the Supreme Court, acting as a court of errors, must be governed exclusively by the facts found in the Circuit Court to which the writ of error is addressed.
Fraud in the inception of the bonds and coupons is not found by the Circuit Court, and in the absence of such a finding it is settled law that the holder is presumed to be a holder for value in the usual course of business, and without notice of any equities between the antecedent parties. He is presumed to be a holder for value, and the Supreme Court, *161 as a court of errors, cannot import into the special finding by intendment anything which the finding does not contain. Mere evidence of fraud cannot be taken into consideration by this court in a case brought here by a writ of error under that act of Congress, as the jurisdiction of the court is expressly limited to a review or re-examination of the questions whether the findings of the Circuit Court are sufficient to support the legal conclusion adopted by the Circuit Court. Such findings cannot be enlarged by intendment any more than a special verdict, and it is the very essence of a special verdict that the jury should find the facts on which the appellate court is to pronounce the judgment according to law, and the court in giving judgment is confined to the facts so found.
Repeated decisions of this court have determined that every special verdict, in order to enable the appellate court to act upon it, must find the facts and not merely state the evidence of facts, as where it states the evidence merely without stating the conclusions of the jury a court of errors cannot act upon such matters even though the evidence reported may be sufficient to justify the assumed conclusion.[*]
Jurisdiction to adjudicate upon evidence in a suit brought here under the twenty-second section of the Judiciary Act is not conferred upon this court, nor can this court perform the office of a jury by drawing the conclusions of fact from the evidence given at the trial, nor is it in the power of the parties to impose such a jurisdiction upon this court, as the jurisdiction and power of the court are settled and defined by the Constitution and the laws of Congress.[]
Nothing short of conclusions of fact will answer the requirement of the law in a court of errors, whether the foundation of the judgment is an agreed statement, a special verdict, or a special finding under the recent act of Congress, as in the case before the court. What is required is that the findings shall contain the conclusions of fact, or, as the rule *162 is stated in a recent decision of this court, "a statement of the ultimate facts or propositions which the evidence is intended to establish, and not the evidence on which those ultimate facts are supposed to rest."[*]
Whether the foundation of the judgment be a statement of facts, a special verdict, or a special finding, the statement must be sufficient in itself, without inferences or comparisons or balancing of testimony or weighing evidence, to justify the application of legal principles which must determine the case.[]
Where the essential facts in a special verdict are not distinctly found by the jury the Supreme Court will not re-examine them, but the court will award a new venire and remand the cause to the court below, as an appellate court of errors cannot intend what is not found, nor can a judgment be rendered in any case where the special verdict is defective in stating the evidence of the fact instead of the fact itself, which is the precise difficulty in the present record.[]
Sufficient facts, however, are not reported in this record to warrant a jury in finding that the bonds and coupons described in the declaration were fraudulent in their inception, but if that were so still there ought to be a new trial, that the plaintiff may have an opportunity to show that he paid value for the coupons, in which event he would be entitled to a verdict.
Full authority was vested in the county judge to execute the bonds, and the mere fact that he was temporarily in another county of the State when he signed his name to the same and affixed the seal of the county thereto is not of itself sufficient to invalidate the bonds, even if the evidence be admissible to contradict the recitals which the bonds contain, as those facts are not necessarily evidence of any fraudulent *163 intent. He may have been detained there by sickness or accident, and he may have executed the bonds while there to prevent delay or a breach of the agreement as to time with the contractor.
Negotiable securities of a corporation which upon their face appear to have been duly issued by the corporation and in conformity with the provisions of their charter are valid in the hands of a bona fide holder thereof without notice, although such securities were in point of fact issued at a place and for a purpose not authorized by the charter of the corporation.[*]
Unquestionably these securities are in due form and purport on their face to have been executed at Sac City in the county of Sac, and there is nut a scintilla of evidence that the plaintiff, as a subsequent transferee, had the slightest knowledge that the recitals did not speak the truth.
Evidence was also offered, as appears by the fifth finding, that the contractor gave one of the bonds as a gratuity to the county judge as soon as they were delivered in execution of the contract. Such evidence might have some tendency to prove fraud in the transaction, but it is not the same thing as fraud. On the contrary, it was only a circumstantial fact from which an inference of fraud might or might not be drawn by a jury or other tribunal authorized to draw such inference from all the evidence in the case.
Inferences of fact, said Tindal, C.J., in Tancred v. Christy,[] "must be drawn by the jury, and cannot be drawn by a court of errors." Ultimate facts, said Mr. Justice Miller, or propositions which the evidence is intended to establish, is what is required, and not the evidence on which those ultimate facts are supposed to rest, and he added that the finding must be sufficient in itself, without inferences or comparisons or balancing of testimony or weighing evidence.[]
*164 Apply those rules to the present case, and it is clear that the findings are not sufficient to support the judgment, and that there should be a new venire, giving the defendants an opportunity to show, if they can, that the bonds were fraudulent in their inception, and the plaintiff an opportunity to show, if he can, that he paid value for the coupons at the time of the transfer.
NOTES
[*] Chitty on Bills, 260, 648.
[] Story on Promissory Notes, § 196.
[] 2 Parsons on Notes and Bills, 438.
[§] 3 Hurlstone & Norman, 284.
[*] White v. Railroad Co., 21 Howard, 575; Murray v. Lardner, 2 Wallace, 110; Moran v. Miami Co., 2 Black, 722; Mercer Co. v. Hacket, 1 Wallace, 83; Gelpeke v. Dubuque, 1 Id. 176; Meyer v. Muscatine, 1 Id. 385.
[] Chester v. Dorr, 41 New York, 282; Turnbull v. Bowyer, 40 Id. 460.
[] Thomson v. Lee County, 8 Wallace, 327; Park Bank v. Watson, 42 New York, 492.
[§] Goodman v. Simonds, 20 Howard, 364.
[*] Revision, 531.
[*] Revision, 508, 519.
[] 18 Stat. at Large, 501.
[*] Goodman v. Harvey, 4 Adolphus & Ellis, 870; Goodman v. Simonds, 20 Howard, 365; Noxon v. De Wolf, 10 Gray, 346.
[*] Wheeler v. Guild, 20 Pickering, 551; Collins v. Martin, 1 Bosanquet & Puller, 648; Miller v. Race, 1 Burrow, 452; Peacock v. Rhodes, 2 Douglass, 633; Grant v. Vaughan, 3 Burrow, 1516; Lawson v. Weston, 4 Espinasse, 56.
[] Story on Bills, 4th edit., § 416; Byles on Bills, 10th ed. 119; Mills v. Barber, 1 Meeson & Welsby, 425; Sistermans v. Field, 9 Gray, 336.
[] Story on Bills, § 415; Uther v. Rich, 10 Adolphus & Ellis, 784; Bailey v. Bidwell, 13 Meeson & Welsby, 73; Raphael v. Bank of England, 33 English Law and Equity, 276; Stephens v. Foster, 6 Carrington & Payne, 289, Arbouin v. Anderson, 1 Adolphus & Ellis, N.S. 498.
[§] Wyman v. Fisk, 3 Gray, 238; Bailey v. Bidwell, 13 Meeson & Welsby, 76; Smith v. Braine, 16 Adolphus & Ellis, N.S. 244.
[*] 2 Wallance, 121.
[] Ranger v. Cary, 1 Metcalf, 369.
[] Pettee v. Prout, 3 Gray, 503; Bank v. Leighton, Law Rep., 2 Exchequer, 61; Way v. Richardson, 3 Gray, 413.
[§] Chitty on Bills, 12th ed. 257; Bank of Bengal v. Macleod, 7 Moore's Privy Council, 35; Backhouse v. Harrison, 5 Barnewall & Adolphus, 1105.
[*] Code, § 114; Revision, § 250; Hull et al. v. Marshall Co., 12 Iowa, 142; Rogers v. Burlington, 3 Wallace, 666; Seybert v. Pittsburg, 1 Id. 272.
[] Supervisors v. Schenck, 5 Id. 784; Gelpcke v. Dubuque, 1 Id. 203; Savings Co. v. New London, 29 Connecticut, 174; Tash et al. v. Adams, 10 Cushing, 252.
[] 5 Wallace, 780.
[§] State v. Delafield, 8 Paige, 533; S.C., 2 Hill, 177.
[*] Davis v. McCready, 17 New York, 232.
[*] Pettee v. Prout, 3 Gray, 503; Magee v. Badger, 34 New York, 248; Hoge v. Lansing, 35 Id. 137.
[] Fitch v. Jones, 5 Ellis & Blackburne, 238; Smith v. Braine, 16 Queen's Bench, 244; Hall v. Featherstone, 3 Hurlstonc & Norman, 287; Tucker v. Morrill, 1 Allen, 528; 2 Parsons on Bills and Notes, 438.
[*] Byles on Bills, 10th ed. 119; Harvey v. Towers, 6 Exchequer, 656; Mather v. Maidstone, 1 C.B., N.S. 273; Mills v. Barber, 1 Meeson & Welsby, 425; Percival v. Frampton, 2 Crompton, Meeson & Roscoe, 180.
[*] 1 Stat. at Large, 85.
[] Barnes v. Williams, 11 Wheaton, 416; Shankland v. Washington, 5 Peters, 397; Suydam v. Williamson, 20 Howard, 434.
[*] Suydam v. Williamson, 20 Howard, 432.
[] Ewing v. Burnet, 11 Peters, 41; United States v. Laub, 12 Id. 1; Richardson v. Boston, 19 Howard, 263.
[*] Burr v. Des Moines Co., 1 Wallace, 102.
[] Seward v. Jackson, 8 Cowen, 412; United States v. Adams, 6 Wallace, 111; Mumford v. Wardwell, Ib. 432; 8 Blackstone's Com. 378.
[] Barnes v. Williams, 11 Wheaton, 416; 2 Tidd's Practice, 4th Amer. ed. 896.
[*] Supervisors v. Schenck, 5 Wallace, 784; Stoney v. Life Ins. Co., 11 Paige, 635.
[] 12 Meeson & Welsby, 323.
[] Burr v. Des Moines Co., 1 Wallace, 102; 1 Archbold, Practice, 11th ed. 451.